The **PEOPLE** of the State of Colorado, Plaintiff-Appellant,

v.

Joseph Barry **GANN**, Defendant-Appellee.

No. 85SA55.

Supreme Court of Colorado, En Banc.

Sept. 8, 1986.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Michael J. Milne, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, Public Defender, Judy Fried, Chief Deputy Public Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal a judgment of dismissal entered by the district court on charges of aggravated robbery and the commission

of a crime of violence.[1] In dismissing the charges, the court ruled that the prosecution violated the defendant's due process rights because, prior to trial, a police detective investigating the case lost the telephone number of an anonymous informant. We conclude that the telephone number did not measure up to the standard of constitutionally material evidence under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and we accordingly reverse the judgment of dismissal.

## I.

On June 24, 1984, at approximately 4:00 p.m., a man wielding a gun robbed jewelry from a salesperson in the O.G. Wilson Store in Northglenn, Colorado. Two days later a police officer of the Denver Police Department received an anonymous telephone call from a woman who said that she had information about the robbery. The woman caller gave the Denver officer a telephone number at which she could be reached. The Denver officer telephoned Detective Steve Hipp of the Northglenn Police Department and conveyed to him the telephone number. Detective Hipp in turn telephoned Northglenn Detective Frank Spottke, who was in charge of the robbery investigation, and passed on the woman's telephone number to him. Detective Spottke was at his home at this time and wrote the telephone number on the back of an envelope in his kitchen and then telephoned the woman.[2]

During her telephone conversation with Detective Spottke, the woman asked the detective if a robbery had been committed at the O.G. Wilson Store in Northglenn, to which Spottke responded, "Yes, we had one." She next asked if the robber wore a false mustache, and the detective told her that it was possible. She then asked if the robber had a heavily pockmarked face, and Detective Spottke told her that he did. Af-

ter these questions were asked and answered, the woman told the detective that he "should be looking for a Joseph Gann." The woman stated that she had been told by a friend that Gann had talked about committing such a robbery. The woman did not mention the friend's name, and she refused to give her own name or a telephone number at which she could later be contacted. She stated that the phone she was talking from was not her home phone but a "pay phone." Detective Spottke was unable to obtain any further information from the woman about her identity or about the robbery. After conversing with the woman, Detective Spottke misplaced the envelope upon which he had written the phone number.

Based on the information obtained from the woman caller, Detective Spottke compiled a photographic lineup with pictures of the defendant and five other men. Two eyewitnesses to the robbery were able to identify the defendant from his photograph as the person who committed the crime. An arrest warrant issued for the defendant and he was ultimately arrested and charged with aggravated robbery and the commission of a crime of violence.

Prior to trial, the defendant moved to dismiss the charges. In the motion to dismiss, the defendant specifically cited and relied on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the United States Supreme Court recognized an accused's right of access to exculpatory evidence pursuant to the Due Process Clause of the Fourteenth Amendment. The defendant's motion made no reference whatever to the Due Process Clause of Article II, section 25 of the Colorado Constitution. It was the defendant's contention that he had been deprived of constitutionally material evidence because the telephone number would have permitted him to contact the unknown informant and thereby develop other evidence exoner-

---

**1.** Appellate jurisdiction over this appeal lies in this court pursuant to section 16-12-102, 8 C.R.S. (1978), and C.A.R. 4(b)(2).

**2.** The record does not reflect the period of time that elapsed between the Denver officer's receipt of the call from the woman and Detective Spottke's later call to the woman.

ating him of the crime. The district court granted the defendant's motion to dismiss. It concluded that, although the loss of the telephone number was inadvertent, the defendant's due process right was violated because there was "a strong possibility" that the telephone number would be "material to the defense of the case." The court in its ruling did not elaborate on the asserted materiality of the telephone number to the defense of the case, nor did it indicate whether or in what manner the loss of the telephone number might impair the defendant in presenting a defense at trial.

The People initially claim that the defendant's due process rights were not violated because the loss of the telephone number did not deprive the defendant of constitutionally material evidence. Alternatively, the People argue that the district court abused its discretion in not imposing a sanction less drastic than dismissal. We conclude that the lost telephone number failed to satisfy the standard of "constitutionally material evidence" applicable to an access-to-evidence claim predicated on the Due Process Clause of the United States Constitution. Our resolution of the appeal on this basis renders it unnecessary to address the People's alternative claim relating to the appropriate sanction.

## II.

In this case, the defendant's motion to dismiss made no mention of the Due Process Clause of the Colorado Constitution, but instead referred generally to the defendant's "due process rights" and the United States Supreme Court's decision in *Brady*, 373 U.S. 83, 83 S.Ct. 1194. The district court similarly failed to make any specific reference to the Colorado Constitution in its ruling. Where, as here, the defendant's motion to dismiss expressly relies on the United States Supreme Court's interpretation of the Due Process Clause of the Fourteenth Amendment and makes no mention of the Due Process Clause of the Colorado Constitution, and where the district court's ruling is similarly devoid of any reference to the state constitution, we must presume that both the motion itself and the court's ruling were based exclusively on federal constitutional standards. Under these circumstances we will review the propriety of the judgment of dismissal on the basis of the federal due process standard only.

It is now well settled that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196. The Due Process Clause further requires the prosecution to produce for an accused's use at trial evidence that is clearly supportive of a claim of innocence, regardless of whether the accused makes a request for such evidence prior to trial. *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); *see also Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecution's failure to disclose plea agreement with key prosecution witness violated due process and required a new trial); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (failure of prosecutor to correct testimony of witness which prosecutor knew to be false violated due process). Because it is the character of the evidence and not the moral culpability or fault of the prosecution that underlies an accused's constitutional right to such evidence, it is of no significance that such evidence might have been lost or destroyed through inadvertence rather than through the moral culpability or willfulness of the prosecutor or the police. *Agurs*, 427 U.S. at 110, 96 S.Ct. at 2400.

The constitutional duty outlined in *Brady* and *Agurs* relates to the *duty to disclose* existing exculpatory evidence that is within the possession or control of the prosecution and thus within its ability to make available to an accused for use at trial. Neither case discussed the extent of the state's *duty to preserve* for an accused's use at trial evidence that was obtained or utilized by law enforcement officers in the investigatory

stage of the case. The scope of that duty was addressed in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), where the court considered "whether the Due Process Clause requires law enforcement agencies to preserve breath samples of suspected drunken drivers in order for the results of breath-analysis tests to be admissible in criminal prosecutions." *Id.* 467 U.S. at 479, 104 S.Ct. at 2530. The Court limited the state's duty of preservation to "constitutionally material evidence," stating:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, *see United States v. Agurs*, 427 U.S. at 109–110 [96 S.Ct. at 2400], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* at 488–89, 104 S.Ct. at 2534 (footnote omitted).

It was the Court's conclusion that California's failure to preserve breath samples did not violate the Due Process Clause for two reasons. First, the breath analysis test and the procedures employed by California convinced the court that the "breath samples were much more likely to provide inculpatory than exculpatory evidence." *Id.* at 489, 104 S.Ct. at 2534.[3] Second, even assuming that the breath analysis tests might have been inaccurate and therefore exculpatory, the Court was satisfied that the lost evidence was not such as to deprive an accused of the opportunity of obtaining comparable evidence by other reasonably available means.[4]

Since the issue in this case is whether Detective Spottke's inadvertent loss or destruction of the telephone number constituted a breach of the state's duty to pre-

---

**3.** The Court in *Trombetta* expanded on the inculpatory character of the evidence as follows:

> Although the preservation of breath samples might conceivably have contributed to respondents' defenses, a dispassionate review of the Intoxilyzer and the California testing procedures can only lead one to conclude that the chances are extremely low that preserved samples would have been exculpatory. The accuracy of the Intoxilyzer has been reviewed and certified by the California Department of Health. To protect suspects against machine malfunctions, the Department has developed test procedures that include two independent measurements (which must be closely correlated for the results to be admissible) bracketed by blank runs designed to ensure that the machine is purged of alcohol traces from previous tests.... In all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test. Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.

467 U.S. at 489, 104 S.Ct. at 2534 (footnotes omitted).

**4.** The *Trombetta* Court elaborated on the other reasonably available means of obtaining comparable evidence as follows:

> Respondents and *amici* have identified only a limited number of ways in which an Intoxilyzer might malfunction: faulty calibration, extraneous interference with machine measurements, and operator error.... Respondents were perfectly capable of raising these issues without resort to preserved breath samples. To protect against faulty calibration, California gives drunken driving defendants the opportunity to inspect the machine used to test their breath as well as that machine's weekly calibration results and the breath samples used in the calibrations.... Respondents could have utilized these data to impeach the machine's reliability. As to improper measurements, the parties have identified only two sources capable of interfering with test results: radio waves and chemicals that appear in the blood of those who are dieting. For defendants whose test results might have been affected by either of these factors, it remains possible to introduce at trial evidence demonstrating that the defendant was dieting at the time of the test or that the test was conducted near a source of radio waves. Finally, as to operator error, the defendant retains the right to cross-examine the law enforcement officer who administered the Intoxilyzer test, and to attempt to raise doubts in the mind of the factfinder whether the test was properly administered.

467 U.S. at 490, 104 S.Ct. at 2535 (footnote omitted).

serve constitutionally material evidence, as required by the Due Process Clause of the Fourteenth Amendment, the *Trombetta* standard of constitutional materiality must necessarily control our resolution of this question.[5]

### III.

The first condition required to satisfy the *Trombetta* standard of constitutional materiality is that the evidence possess an exculpatory value that was apparent before the evidence was lost or destroyed. We conclude that the record before us fails to satisfy this condition. The telephone number and the information obtained through its use provided Detective Spottke with an investigative lead that ultimately implicated the defendant in the robbery. In terms of its content, the telephone call was decidedly inculpatory in relation to the defendant. Furthermore, even if the telephone number had been furnished the defendant, the prospect of his making actual contact with the caller was practically nil, since the woman made her telephone call not from her home phone but from a "pay phone." The record is simply barren of any demonstrable showing that exculpatory evidence would have been forthcoming in the event the defendant had been able to use the telephone number to contact the informant. Under these circumstances, the defendant's claim that he might have been able to develop exculpatory evidence by contacting the caller is nothing more than unsupported speculation.

The second condition of constitutional materiality under *Trombetta* is that the unavailable evidence be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. We are satisfied that the record is deficient in relation to this condition. In arguing to the contrary, the defendant asserts that at the time of the robbery he was in a park with a woman who gave him a ride home and that the telephone-caller might well have been this woman and thus provided him with alibi evidence. Considering the highly inculpatory content of the female caller's message to Detective Spottke, the defendant's argument is utter conjecture. Furthermore, the record shows that the defendant filed with the court a notice of alibi in which he listed three witnesses and their respective addresses, all of whom would allegedly testify that they were with the defendant in the park at the time of the robbery. The record contains not the slightest suggestion that, so far as the defendant's alibi defense is concerned, the defendant was somehow impaired in his ability to obtain alibi evidence through the testimony of his own listed witnesses.

While undoubtedly the better police practice would have been to have taken steps to preserve the telephone number, we have no hesitation in concluding under the circumstances of this case that the *Trombetta* standard of constitutional materiality has not been met. Since the loss of the telephone number did not violate the Due Process Clause of the Fourteenth Amendment,

**5.** Prior to the United States Supreme Court's decision in *Trombetta,* this court on several occasions addressed the issue of constitutional materiality in the context of a pretrial motion to dismiss predicated on the prosecutorial loss or destruction of evidence. The common thread running through these pre-*Trombetta* cases is that evidence will be considered constitutionally material when it is not merely incidental to the prosecution's case and when the defendant demonstrates to a reasonable possibility that such evidence could have been of assistance to the defense. *People ex rel. Gallagher v. District Court,* 656 P.2d 1287 (Colo.1983); *People v. Holloway,* 649 P.2d 318 (Colo.1982); *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980). Our

discussion of constitutional materiality in these cases, however, was not specifically related to either the federal or state Due Process Clauses. In *People v. Sheppard,* 701 P.2d 49, 53–54 (Colo. 1985), we expressly declined to decide whether the *Trombetta* standard of materiality should be adopted as the appropriate standard under the Colorado Due Process Clause, since in *Sheppard* the destroyed evidence clearly met the *Trombetta* standard. Because here the defendant's motion and the district court's ruling were premised on the Due Process Clause of the Fourteenth Amendment, we decline on this occasion to determine whether the *Trombetta* standard should be adopted as part of state constitutional doctrine.

it was inappropriate for the district court to impose the sanction of dismissal.

The judgment is reversed and the case is remanded to the district court for further proceedings.