The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Steven McKINSTREY, Defendant–Appellee.

No. 92SA374.

Supreme Court of Colorado, En Banc.

June 7, 1993.

Paul R. McLimans, Dist. Atty., Cynthia J. Kowert, Deputy Dist. Atty., Hot Sulphur Springs, for plaintiff-appellant.

Dixon and Snow, P.C., Steven Janiszewski, Denver, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This is an interlocutory appeal from an order of the Grand County District Court suppressing evidence seized during a warrantless search of a cabin located in Grand County, Colorado. The prosecution asserts that the district court erred in granting Steven Charles McKinstrey's motion to suppress the evidence seized in the warrantless search. Because the record before us suggests that the district court did not consider *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), in determining whether the warrantless search violated the Fourth Amendment to the United States Constitution, we affirm the suppression order in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

### I

On May 4, 1992, Officer Mark Husmann of the Grand County Sheriff's Department noticed a car parked at an unoccupied cabin in Grand County. Because Officer Husmann had previously investigated a break-in at the cabin, he stopped to determine whether a burglary was being committed.[1] A man came out of the cabin and approached Officer Husmann. He identified himself as "Steven McKinstery" and said that Gayland Sanchez had given him permission to use the cabin.[2] When Officer Husmann asked the man for identification, he said that he had no driver's license or any other identification on him, but gave a birth date of June 24, 1958. The man claimed that a friend had driven him to the cabin but had left to walk to Grand Lake.

Officer Husmann then contacted Frank Drumm, who lived in a nearby cabin. Drumm told Officer Husmann that the man

---

[1]. In December 1991, the power company noticed that the cabin door was open and notified the Grand County Sheriff's Department. Officer Husmann was sent to the cabin to investigate. Frank Drumm, who lived in a nearby cabin, gave Officer Husmann the telephone number of Gayland Sanchez. According to Drumm, Sanchez was the son of the owner of a partial interest in the property on which the cabin was located. Officer Husmann informed Sanchez that the door was open and that the deadbolt lock on the door was not operational. Sanchez and Officer Husmann agreed that Drumm would place a padlock on the door and keep the key to prevent future break-ins.

[2]. It is unclear from the record whether Sanchez actually possessed any ownership interest in the property. Drumm testified that Sanchez's eighty-four year old mother, who lives in California, owned a partial interest in the property on which the cabin was located. Drumm further testified that he had only seen Sanchez at the cabin once during the last two or three years.

arrived in a car at the cabin alone and unloaded what appeared to be computer equipment. Officer Husmann subsequently ran an outstanding warrants check on "Steven McKinstery." The check revealed active warrants in Boulder County for a "Steven McKinstrey" with the same date of birth and a physical description that matched the man Officer Husmann had just spoken with at the cabin.

Officer Husmann, accompanied by another officer who had arrived as backup, proceeded to the cabin to arrest the man. After calling out McKinstrey's name and receiving no response, the officers entered the cabin through the open front door to conduct a cursory search for him. The officers were in the cabin for approximately one minute but did not see anyone. The officers immediately left the cabin to discuss whether the individual that Officer Husmann had spoken with at the cabin was the same person identified in the warrants, whether the individual or evidence of a crime might be located in the cabin, and whether they needed to phone Sanchez to obtain permission to search the cabin.

Drumm, who had followed the officers to the cabin, volunteered that he had a key to the cabin and was a partial owner of the cabin.[3] In response to an inquiry from Officer Husmann, Drumm also agreed to grant permission to search the cabin. The officers went back into the cabin and subsequently seized cocaine, marijuana, drug paraphernalia, and a stolen bicycle. McKinstrey was later arrested and charged with two counts of unlawful possession of a controlled substance, one count of unlawful possession of marijuana, and one count of theft by receiving.

McKinstrey filed a motion to suppress the evidence, claiming that the search and the subsequent seizure of the narcotics violated the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution. In its response to McKinstrey's motion, the prosecution asserted, *inter alia,* that the war-

rantless search was a constitutionally valid third-party consent search because Drumm possessed common authority over the cabin.

Following a pretrial suppression hearing on September 11, 1992, the district court granted McKinstrey's motion to suppress, finding that Drumm did not have authority to consent to the search of the cabin and that the other exceptions to the constitutional requirements for a search warrant did not exist. The district court did not specify whether its ruling was based on the federal constitution, the state constitution, or both.

■ The prosecution filed an interlocutory appeal pursuant to C.A.R. 4.1, contending that the district court erred in concluding that the search based on Drumm's consent was unconstitutional. In the absence of a clear statement that a suppression ruling is grounded on state as opposed to federal constitutional law, we will presume that a court relied on federal law in reaching its decision. *People v. Inman,* 765 P.2d 577, 578 (Colo.1988); *see also People v. Romero,* 767 P.2d 1225, 1226–27 (Colo.1989); *People v. Gann,* 724 P.2d 1318, 1320 (Colo.1986); *cf. Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983). Thus, the sole issue in this interlocutory appeal is whether *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), requires reversal of the suppression order under the Fourth Amendment. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## II

In *Rodriguez,* the United States Supreme Court addressed the constitutional validity of a warrantless search based on the consent of a third party. In *Rodriguez,* Gail Fischer told the police that Edward Rodriguez had severely beaten her in an apartment located in Chicago, Illinois. Several times, Fischer referred to the apartment as

---

**3.** Officer Husmann testified that prior to that point he did not know that Drumm was a partial owner of the cabin. However, he stated

that he knew that Drumm was the only permanent resident on the property, was the caretaker of the area, and possessed a key to the cabin.

"our apartment" and told the officers that she had clothes and furniture there. She agreed to go to the apartment with the police to arrest Rodriguez. Upon arrival at the apartment, Fischer let the officers in with her key and gave them permission to enter. The police arrested Rodriguez in the apartment and seized drugs and drug paraphernalia.

The Supreme Court initially found that Fischer did not possess common authority to validly consent to a search of the apartment. *Id.* at 181–82, 110 S.Ct. at 2797–98. The Supreme Court then proceeded to address the prosecution's argument that the search nevertheless was valid because the police reasonably believed that Fischer had the authority to consent. *Id.* at 183–89, 110 S.Ct. at 2798–2802.

In this interlocutory appeal, the prosecution contends that Drumm possessed sufficient common authority over the cabin to validly consent to the search. The prosecution also asserts that the prohibition against warrantless searches does not apply to searches based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises.[4] As in *Rodriguez*, we address each argument separately.

### III

■ The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution establish the right to be free from unreasonable searches and seizures. *People v. McKinstry*, 843 P.2d 18, 20 (Colo.1993); *see* U.S.

Const. amend. IV; Colo. Const. art. II, § 7. These constitutional provisions generally prohibit a warrantless entry of a person's home, whether to make an arrest or to search for specific objects. *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797–98; *People v. Thiret*, 685 P.2d 193, 200–01 (Colo.1984); *People v. Savage*, 630 P.2d 1070, 1073 (Colo.1981); *see also Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ The prohibition against warrantless searches does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises. *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797–98; *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *People v. Drake*, 785 P.2d 1257, 1265 (Colo.1990); *People v. Berow*, 688 P.2d 1123, 1127 (Colo. 1984); *Thiret*, 685 P.2d at 201; *Savage*, 630 P.2d at 1073.

In *Matlock*, the United States Supreme Court stated:

Common authority is of course, not to be implied from the mere property interest that a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons

---

4. The prosecution has not asserted that McKinstrey had no legitimate expectation of privacy in the cabin and the issue was not raised in the trial court. Accordingly, we do not address the question of whether McKinstrey had a legitimate expectation of privacy in the cabin. *See Steagald v. United States*, 451 U.S. 204, 208–11, 101 S.Ct. 1642, 1646–47, 68 L.Ed.2d 38 (1981) (holding that prosecution was precluded from raising legitimate expectation of privacy question where issue was not raised in lower courts); *People v. Burola*, 848 P.2d 958, 960 n. 2 (Colo.1993) (refusing to address question of legitimate expectation of privacy on appeal); *People v. Hearty*, 644 P.2d 302, 311–12 (Colo.1982) (where prosecution initially objected to defen-

dant's standing to contest search at suppression hearing, but later withdrew objection, prosecution's standing argument on appeal was deemed waived); *see also United States v. Brown*, 961 F.2d 1039, 1042 (2d Cir.1992); *United States v. Thompson*, 944 F.2d 1331, 1339 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *United States v. Maestas*, 941 F.2d 273, 276 n. 2 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 909, 116 L.Ed.2d 809 (1992); *United States v. Wanless*, 882 F.2d 1459, 1462–63 (9th Cir.1989); *United States v. Garcia*, 882 F.2d 699, 701–02 (2d Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Nechy*, 827 F.2d 1161, 1165 (7th Cir.1987).

generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (citations omitted); *Savage,* 630 P.2d at 1073 (quoting *Matlock* ). The prosecution has the burden of establishing common authority. *Rodriguez,* 497 U.S. at 181, 110 S.Ct. at 2797–98.

Based on the record before us, we agree with the district court that the prosecution has not established that Drumm had "joint access or control for most purposes" of the cabin searched by the officers and therefore affirm the suppression order in part. However, the determination that Drumm did not possess common authority over the cabin does not resolve the question of whether the warrantless search of the cabin based on the consent of a third party was unconstitutional.

## IV

### A

■ After finding that Fischer did not possess common authority to validly consent to a search of the apartment in *Rodriguez,* the Supreme Court addressed the prosecution's argument that the search nevertheless was valid because the police reasonably believed that Fischer had the authority to consent. *Rodriguez* concluded that while the exclusionary rule bars the admission of evidence seized in violation of the Fourth Amendment unless a defendant validly consents to a search, the Fourth Amendment does not guarantee that no police searches will occur unless the defendant consents. *Id.* at 183, 110 S.Ct. at 2798–99.

Instead, the Fourth Amendment provides that "unreasonable" searches will not occur. *Id.;* U.S. Const. amend. IV. *Rodriguez* recognized that there are various elements that can make a search "reasonable"—one of which is consent. *Rodri-*

*guez,* 497 U.S. at 184, 110 S.Ct. at 2799. The Supreme Court, however, refused to "impose upon this element a requirement that we have not imposed upon other elements that regularly compel government officials to exercise judgment regarding the facts: namely, the requirement that their judgment be not only responsible but correct." *Id.*

The *Rodriguez* opinion explained:

that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing the warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

. . . .

We see no reason to depart from this general rule [of reasonableness] with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape. See *Archibald v. Mosel,* 677 F.2d 5 (CA1 1982).

*Rodriguez,* 497 U.S. at 185–86, 110 S.Ct. at 2800; *see also Maryland v. Garrison,* 480 U.S. 79, 86–88, 107 S.Ct. 1013, 1017–1018, 94 L.Ed.2d 72 (1987) (holding that reasonableness does not require factual correctness); *Hill v. California,* 401 U.S. 797, 803–05, 91 S.Ct. 1106–1111, 28 L.Ed.2d 484 (1971) (same); *cf. Florida v. Jimeno,* ——

U.S. ——, —— – ——, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991) (holding that standard for measuring scope of consent is that of objective reasonableness).

In adopting a rule which had been increasingly relied upon by lower courts in recent years in upholding third-party consent searches, *Rodriguez* held:

> As with other factual determinations bearing upon search and seizure, determinations of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? If not then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801 (citations omitted); *accord Berow*, 688 P.2d at 1126–27 (determining that "not only did the officer enter the apartment in response to the exigent circumstances, he also reasonably relied on the authority of [a third party] to permit a search"); *see also* 3 Wayne R. LaFave, *Search and Seizure* § 8.3, at 62 (1993 Supp.) (concluding that the *Rodriguez* result is "eminently sound" because consent searches should not constitute a disfavored police activity and because a reasonable mistake in determining a third party's authority to consent does not give rise to an unreasonable

search). Thus, under *Rodriguez*, a warrantless search is not invalid merely because of a reasonable good-faith mistake of fact by the officers concerning the authority of the party consenting to the search.[5]

■ However, a warrantless search based on third-party consent cannot be upheld solely on the basis that the person giving the consent believed he was legally empowered to consent. *See United States v. Heisman*, 503 F.2d 1284, 1289 (8th Cir. 1974); 3 Wayne R. LaFave, *Search and Seizure* § 8.3(g), at 267 (1987 & 1993 Supp.). Instead, the test in *Rodriguez* focuses on whether a police officer's belief that a third party had the authority to consent to a search is objectively reasonable. *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801–02; *accord Berow*, 688 P.2d at 1126–27; *see also United States v. Rosario*, 962 F.2d 733, 738 (7th Cir.1992) (question under *Rodriguez* is whether the third party "projects an aura of authority upon which one can reasonably rely"); *United States v. Salinas–Cano*, 959 F.2d 861, 865 (10th Cir.1992) (stating that *Rodriguez*'s "analysis of this subject instead rests entirely on the *reasonableness* of the officer's belief"); *United States v. Whitfield*, 939 F.2d 1071, 1074 (D.C.Cir.1991) (stating that "*Rodriguez* thus applies to situations in which an officer would have had valid consent to search if the facts

**5.** Professor LaFave has concluded that the reference to good faith is not intended to suggest any relationship between the apparent authority doctrine that was adopted in *Rodriguez* and the *Leon* good-faith rule. *See* 3 Wayne R. LaFave, *Search and Seizure* § 8.3, at 63 n. 98.3 (1993 Supp.) (stating that "[t]he apparent authority doctrine was well established in lower court decisions before *Leon*, which is quite properly never cited or relied upon in *Rodriguez*"); *Commonwealth v. Quiles*, 619 A.2d 291, 297 n. 4 (Pa.Super.Ct.1993) (recognizing that jurisdictions that have rejected the *Leon* good-faith rule nevertheless have adopted the apparent authority doctrine in upholding warrantless searches based on third-party consent).

Under the *Leon* good-faith rule, an officer's mistaken good-faith belief in the soundness of a warrant is deemed to justify an exception to the exclusionary rule. As an exception to the exclusionary rule, the *Leon* good-faith rule permits the admission of evidence that otherwise would

be inadmissible because of an unconstitutional search and seizure. On the other hand, evidence that is admitted pursuant to *Rodriguez* is admissible because the search itself is not unconstitutional, rather than as an exception to the exclusionary rule. While the ultimate result is the same, the evidence seized during the search is admissible if either rule is satisfied, the *Leon* good-faith rule is analytically different from the rule adopted in *Rodriguez*.

In this case, the trial court found that the officers "acted with the utmost good faith in entering upon the property." The trial court's conclusion that the officers had a good-faith belief that Drumm had the authority to consent to a search of the cabin is amply supported in the record and is not disputed on appeal. However, an officer's good-faith belief that a third party has the authority to consent to a search, standing alone, is not sufficient under *Rodriguez*. The officer's belief also must be objectively reasonable.

were as he reasonably believed them to be").[6]

Under *Rodriguez*, police officers also should make reasonable inquiries when they find themselves in ambiguous circumstances regarding the authority of the third party to consent to the search. *See Rosario*, 762 F.2d at 738 (stating that absent "sufficient facts, officers have a duty to seek further information to determine whether they may reasonably infer that the inviter has the necessary authority to consent to an entry or search of the premises"); 3 Wayne R. LaFave, *Search and Seizure* § 8.3(g), at 267 (1987 & 1993 Supp.); *e.g., Whitfield*, 939 F.2d at 1075 (police questioning of mother did not disclose sufficient information to support a reasonable belief that she had authority to permit search of 29–year–old son's room). *Rodriguez* stressed that its holding

> does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry.

*Rodriguez*, 497 U.S. at 188, 110 S.Ct. at 2801.

## B

Based on the foregoing review, we conclude that the question of whether the evidence seized from the cabin should be suppressed as violative of the Fourth Amendment is governed by *Rodriguez*, which delineated the proper analysis for third-party consent searches. At the suppression hearing, the district court specifically raised the issue of whether the officers' belief was reasonable that Drumm had the authority to consent to the search and questioned whether the officers' belief was evaluated subjectively or objectively.

The district court first asked the prosecution to assume that Drumm's consent to search was invalid. The district court then asked the prosecution if the officers acted on Drumm's authority and entered the residence, and it later turned out that no authority existed, whether the officers were "out of luck." The prosecution did not mention *Rodriguez* in response to the district court's question, but instead discussed prior Colorado case law.

Based on the record before us, it does not appear that the district court considered *Rodriguez* in determining whether the warrantless search based on Drumm's consent violated the Fourth Amendment. Because the district court failed to apply *Rodriguez*, we reverse and remand for consideration of the question of whether it was reasonable for the officers to conclude that Drumm had the authority to consent to a search of the cabin.[7] We only address the

---

**6.** The question of objective reasonableness under *Rodriguez* is a question of law that is subject to de novo review. *See United States v. Evans*, 937 F.2d 1534, 1536–37 (10th Cir.1991); *see also United States v. Harrison*, 918 F.2d 469, 473 (5th Cir.1990) (reasonableness of investigatory stop is a question of law subject to de novo review); *United States v. Tedford*, 875 F.2d 446, 448 (5th Cir.1989) (objective reasonable reliance on a search warrant is a question of law subject to de novo review).

**7.** The evidence at the suppression hearing established that Officer Husmann knew that Drumm was the caretaker of the premises, was the only permanent resident on the property, and possessed the key to the padlock on the cabin. The testimony does not suggest any reason for the officers to doubt Drumm's statement that he was a partial owner of the cabin. On remand, the district court must determine whether it was reasonable for the officers to conclude under the facts of this case that Drumm had the authority to consent to a search of the cabin. *Compare United States v. Brokaw*, 985 F.2d 951, 954 (8th Cir.1993) (upholding warrantless search because it was objectively reasonable for the officers to believe that the third party had authority to consent), *and United States v. Hall*, 979 F.2d 77, 79–80 (6th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 736 (1993) (same) *and Rosario*, 962 F.2d at 738 (same) *and United States v. Kinney*, 953 F.2d 863, 866–67 (4th Cir.) (same), *cert. denied*, — U.S. ——, 112 S.Ct. 2976, 119 L.Ed.2d 595 (1992) *and United States v. Rodriguez*, 888 F.2d 519, 523 (7th Cir.1989) (same) *and United States v. Yarbrough*, 852 F.2d 1522, 1534 (9th Cir.) (same), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988) *with Salinas–Cano*, 959 F.2d at 865–66 (rejecting prosecution's claim that apparent authority exception applied) *and Whitfield*, 939 F.2d at 1074–75 (finding that offi-

Fourth Amendment issue of whether it was reasonable for the officers to conclude that Drumm had the authority to consent to a search of the cabin, and do not reach the same issue under the Colorado Constitution. The remaining issues relating to the search do not require analysis or resolution in this case.

## V.

Accordingly, we affirm the suppression order in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

ROVIRA, C.J., specially concurs.

Chief Justice ROVIRA specially concurring:

The majority concludes that a "warrantless search is not invalid merely because of a reasonable good-faith mistake of fact by the officers concerning the authority of the party consenting to the search." Op. at 472. Because the majority opinion is a correct interpretation of federal constitutional law, I join in its analysis and conclusion. I write separately only to express my belief that the analysis under article II, section 7, of the Colorado Constitution is identical to that required by federal constitutional law as interpreted by the United States Supreme Court in *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).[1] Thus, a warrantless search based on the consent of a third person whom the police reasonably believe has authority to consent to the search is not "unreasonable" under the Colorado Constitution.

## I

Article II, section 7, of the Colorado Constitution, like the Fourth Amendment to the United States Constitution, prohibits "unreasonable searches and seizures." Our jurisprudence under article II, section 7, for determining whether an intrusion into an individual's privacy amounts to an

unconstitutional search or seizure requires a two-step inquiry: (1) whether the intrusion was a search; and (2) if the intrusion amounts to a search, whether the intrusion was reasonable. *People v. Hillman*, 834 P.2d 1271, 1273 (Colo.1992).

In determining whether an intrusion is a search under article II, section 7, we have occasionally diverged from the United States Supreme Court. *See People v. Oates*, 698 P.2d 811 (Colo.1985); *People v. Sporleder*, 666 P.2d 135 (Colo.1983); *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980). *But see Hillman*, 834 P.2d 1271. I have repeatedly noted my disagreement with the development of different standards in this area. *See, e.g., Oates*, 698 P.2d 811 (Rovira, J., dissenting); *Sporleder*, 666 P.2d 135 (Rovira, J., dissenting). However, the question before us is not whether the intrusion was a search, but whether, assuming the intrusion was a search, it was reasonable. Clearly, the standard by which the reasonableness of a search is tested is the same under the Fourth Amendment and the Colorado Constitution.

In interpreting the reasonableness requirement of the Fourth Amendment the Supreme Court in *Rodriguez* explained that

in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement— is not that they always be correct, but that they always be reasonable.

*Rodriguez*, 497 U.S. at 185–86, 110 S.Ct. at 2800. The consent of an interested party renders a search "reasonable" under article II, section 7, whether that person is the individual whose property is searched, *see People v. Drake*, 785 P.2d 1257, 1265 (Colo.

---

cers could not reasonably have believed that third party had authority to consent to search).

**1.** Article II, section 7 was relied upon by the defendant in his motion to suppress in the trial court. *See* Op. at 469.

1984), or possesses common authority over the premises, *see People v. Savage*, 630 P.2d 1070, 1073–74 (Colo.1981). Although Drumm did not have "joint access or control" of the cabin, and thus was unable to give valid consent to the search under *Savage*, 630 P.2d at 1073–74, he may have "possessed the 'necessary appearance of authority ...' to consent to the search." *People v. Berow*, 688 P.2d 1123, 1127 (Colo. 1984).

In *Berow*, although we held the search at issue was warranted by exigent circumstances, we also recognized that the reasonable reliance on the authority of a third party could be sufficient to validate a warrantless search. *Id.* at 1126–27. Such a conclusion is eminently sound. In the words of one commentator:

> [I]f it is accepted that the making of searches by consent should not occupy second-class status in the hierarchy of law enforcement practices, then certainly the search should not be undone by reasonable good-faith mistakes of *fact* concerning the authority of the consenting party....
>
> ... [T]here is no apparent reason to disfavor consent searches, for—whether or not there would be a basis for making the search later pursuant to a warrant—such searches are both an important investigative tool and a useful means by which persons (both guilty and innocent) can beneficially manifest their cooperation with investigation into suspected criminal activity.

3 Wayne R. LaFave, *Search and Seizure* § 8.3 at 62 (1993 Supp.).

Article II, section 7, requires that a search be "reasonable," not that the judgment of the officer be correct concerning the authority of the person who gives consent.