The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

James L. UPSHUR, Jr., Defendant–
Appellant.

No. 94CA0551.

Colorado Court of Appeals,
Div. V.

Jan. 25, 1996.

Rehearing Denied Feb. 29, 1996.

Certiorari Denied Sept. 3, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, M. Catherine Duba, Assistant Attorney General, Denver, for Plaintiff–Appellee.

John Turner, Colorado Springs, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, James L. Upshur, appeals from the judgment of conviction entered on a jury verdict finding him guilty of violating the Colorado Organized Crime Control Act (COCCA); conspiracy to violate COCCA; theft; and second degree forgery. The single issue raised in this appeal is the validity of the warrantless search of a storage locker. We affirm.

In 1989, self-storage businesses in Colorado Springs, including Astrozon Self–Storage (Astrozon), were experiencing a series of burglaries and thefts of items from self-storage lockers. On August 28, based upon reports of suspicious activity concerning locker A–3, a police officer was sent to Astrozon to investigate.

During the investigation, a manager of Astrozon told the officer that they could not locate the lessee of storage unit A3. She also told the officer that the lessee of locker A–3 had not paid rent for several months. In fact, however, the rent was unpaid only for the month of August.

The manager further explained that the lessee of A–3 was "locked out" of the storage unit and that Astrozon had "seized" the locker by placing one of its own locks on the locker. This action, according to the manager, prevented the lessee from entering the locker to retrieve his property until he paid rent or until Astrozon had sold items in the locker to satisfy the debt.

According to his testimony, the officer then asked to see the records of this locker, which included two rental agreements, correspondence, a document purporting to give power of attorney, and some accounting records.

The records indicated that defendant had originally rented the storage space for a one-month term which extended through December 1988. A proposed power of attorney had transferred defendant's "interest" to one Kevin Cherry, who also had signed a new lease agreement. The new lease agreement was for a six-month term ending on July 1, 1989. According to the file, Astrozon had sent Cherry a past-due notice for August rent.

Several notices of non-payment of rent, returned as undeliverable, were included in the file. The records, although difficult to read, showed that payment of rent on the

locker had been erratic, that earlier arrearages had been paid, and that no rent had been paid for August. The officer testified that, based upon his review, he believed that the rent was several months overdue.

The pertinent rental agreement in the file had four, separate termination mechanisms: (1) "with or without cause at the end of any storage term"; (2) for "reasonable cause" at any time by giving 24 hours written notice; (3) in the event that rent was due and unpaid, "by reason of default in the payment of rent"; or (4) if lessee defaulted in any of the lease covenants or abandoned the premises, the lessor could enter and remove all property "in which event [the] agreement shall terminate." The lease also provided that any acceptance of a late rental payment did not waive any of the terms of the contract.

The lease also provided that the lessee's personal property was subject to a lien after 14 consecutive days of nonpayment of rent. After 14 days, the lessor could send a preliminary lien notice, and if the lessee did not pay the delinquent rent by the time specified in the notice, then, according to the lease terms, lessor had the right to enter the locker and seize the property for subsequent sale. A sign in the office, posted pursuant to the Self-service Storage Facility Liens Act, § 38–21.5–104, C.R.S. (1982 Repl.Vol. 16A), confirmed that stored property would be sold after 30 days of non-payment of rent. Several preliminary lien notices from prior months were in the file.

The officer testified that, after he ended the interview, he contacted a supervisor and later a deputy district attorney for advice as to whether the lessor could let him enter locker A–3. Both agreed that it could.

The officer returned to Astrozon the next day and asked the manager for permission to enter the locker. The manager consented, and again confirmed that it was her understanding that the lessee had no further right to enter the storage unit because of nonpayment of rent. Upon entry into the locker, the officer observed weapon inventories, instruction manuals for security alarms, electrical detonators, and a large quantity of what the police officer described as "Islamic propaganda materials." The officer left the locker as it was, and the manager relocked it.

Two days later, the police department's intelligence unit, again with the consent of the manager, entered locker A–3 and took photographs. The original investigating officer ultimately entered the unit with a search warrant on September 15 and seized a number of items.

Prior to trial, defendant filed a motion to suppress the evidence, contending that the warrantless entry into the locker was unreasonable in violation of his Fourth Amendment rights. The trial court found that the officer reasonably believed that the lessor had the authority to consent to the search and denied the motion to suppress.

### A.

■ Initially, we address the trial court's determinations that the defendant had standing to challenge the search and had not abandoned the property in the locker.

The trial court concluded that defendant had not abandoned any personal property and had a reasonable expectation of privacy in the storage locker. Because this factual determination has support in the limited portion of the record which has been provided on appeal, we are bound by those findings. See *People v. Thomas*, 853 P.2d 1147 (Colo. 1993).

### B.

Relying on *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), and *People v. McKinstrey*, 852 P.2d 467 (Colo.1993), the court concluded that an officer could rely on the consent of a lessor as long as that reliance was objectively reasonable. It determined that the warrantless entry was justified here because the officer reasonably believed that the lessor had authority to consent to the entry into the locker. The court found specifically that, before the officer accepted the consent of the manager, he acted in good faith, reviewed a complicated lease agreement, and consulted a supervisor and an attorney.

■ A trial court's ruling on a motion to suppress will not be disturbed if it is based upon a proper application of the law to factual findings which are adequately supported by the record. *People v. Palmer,* 888 P.2d 348 (Colo.App.1994). We find no error.

■ "The Fourth Amendment is not [a] guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605, 613 (1985). The validity of an intrusion based upon a warrantless search must be tested against an objective standard of reasonableness based on the totality of the facts and circumstances known to the officer at the time. *See Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The officer may proceed on the basis of the "factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949).

■ A warrantless search may be conducted if valid consent is obtained from a third party who has the authority to give such consent. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *People v. Hopkins,* 870 P.2d 478 (Colo.1994); *see also People v. Sanders,* 904 P.2d 1311 (Colo.1995).

"Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." Thus, even if a consenting third party lacks actual authority, if a police officer reasonably believes that such third party has authority to consent to a search, the search is not unconstitutional. *Illinois v. Rodriguez, supra,* 497 U.S. at 186, 110 S.Ct. at 2800, 111 L.Ed.2d at 160.

■ The test is whether the police officer's belief that a third party had authority to consent is objectively reasonable. *People v. McKinstrey, supra; see United States v. Whitfield,* 939 F.2d 1071, 1074 (D.C.Cir.1991) (Regardless if a third person has the authority to validate a search, a search will be upheld if an officer would have had valid consent to search "if the facts were as he reasonably believed them to be.").

■ Generally, a lessor does not have common authority over leased premises. And, although a lessor may have a right of access to leased property, that factor, standing alone, usually will not give the lessor authority to authorize a search. *See People v. Brewer,* 690 P.2d 860 (Colo.1984); *see also Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

This does not mean, however, that a lessor never has the authority to consent to a search of leased property. *See, e.g., People v. Montoya,* 914 P.2d 491 (Colo.App.1995) (lessee had no reasonable expectation of privacy in motel room after rental period expires). *See also United States v. Reyes,* 908 F.2d 281 (8th Cir.1990), *cert. denied, Reyes–Resendez v. United States,* 499 U.S. 908, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991) (when rental term expires, even if lessor has not removed stored property, lessee has no expectation of privacy in bus storage locker); *cf. United States v. Elliott,* 50 F.3d 180 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996) (landlord has authority to consent to a search by police of dwelling units that are not leased); *United States v. Sledge,* 650 F.2d 1075 (9th Cir.1981) (although tenant's lease had not yet expired, it was objectively reasonable based on the condition of the apartment to believe that the apartment was vacant).

■ Defendant asserts that a valid lease existed, and, therefore, lessor had no legal authority to consent to a search of the leased premises. Thus, he concludes, any mistake on the police officer's part that the lessor had such authority was not an objectively reasonable good faith belief, but was a mistake of law. We disagree. Contrary to defendant's assertion, the issue here does not turn on the niceties of lease or contract law. Rather, the issue is whether it was objectively reasonable under these particular facts for the police officer to act as he did.

Here, the lease allows termination without notice upon nonpayment of rent. The officer, based upon his investigation, believed

that: (1) the lessee had not paid rent for several months; (2) the lessee could not be located; and (3) the lessor had retaken control of the locker. That is, if the facts were as the officer believed them to be, the lessee had defaulted on the lease for nonpayment of rent, possession of the locker had reverted to the lessor, and the lessor therefore had the authority to consent to a search.

■ Simply because the lessor may or may not have had the authority to sell the contents of the locker under the numerous requirements of the Self-service Storage Facility Liens Act did not mean that the lessor otherwise could not legally repossess the storage locker. The lease enabled the lessor to retake possession of the storage unit upon nonpayment of rent. The facts available to the police officer, although inaccurate in part, indicated that is what had occurred.

■ Defendant asserts that, nevertheless, the officer's belief was not objectively reasonable.

■ Although we defer to the trial court's findings of historical facts when, as here, they are supported by competent evidence in the record, the question of objective reasonableness is one of law subject to *de novo* review. *People v. McKinstrey, supra.* From our independent review, we disagree with defendant and conclude that the officer's reliance on the lessor's authority to consent was objectively reasonable.

Here, the manager told the officer that the locker had been "seized" because the lessee was several months behind in payment of rent and could not be located. The manager also told the officer that the lessee no longer had any right to enter the locker because of the nonpayment of rent.

The officer then personally observed the manager's lock on the locker, and took steps to attempt to verify the manager's statements by reviewing the company files. These files reflected a history of late payments, delinquent notices, preliminary lien notices, and unpaid rent.

Although a more thorough review of these documents indicated that, in fact, the rent was unpaid only for August, considering the disorganized condition of the ledger sheets, documented history of frequent arrearages, multiple delinquency and preliminary lien notices, combined with the managers' statements and the officer's personal observations, it was reasonable for a police officer under these circumstances to believe that the lessee was several months behind in rent and, therefore, that the lessor had the authority to consent to a search. *Cf. United States v. Brown,* 961 F.2d 1039 (2d Cir.1992) (mistaken belief that the landlord's limited authority to enter a tenant's premises to turn off electrical appliances constituted general authority to consent to search was misapprehension of the law, not a reasonable but factually erroneous belief).

Thus, even if the lessor lacked the authority to consent to the search, the officer had an objectively reasonable belief that the manager had such authority. Hence, we perceive no error in the trial court's denial of the motion to suppress.

The judgment is affirmed.

CASEBOLT, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

I respectfully dissent.

Defendant, under the alias Raymond Douglas Williams, originally rented the storage space from Astrozon in 1985 for a period of one month which was extended as anticipated by the rental agreement through December 1988. Commencing January 1989, Astrozon rented the unit to a Kevin L. Cherry.

The payment of rent on the storage unit was irregular commencing in 1985 and more so during 1989, with the outstanding rent and fees during 1989 reaching as much as $306 (five plus months). Astrozon had mailed notices to both Williams and Cherry on several occasions demanding payment of the rent and had previously "over-locked" the storage unit. "Over-locking" means Astrozon places its lock on the storage unit together with the occupant's lock, a procedure which, without further action, denies both Astrozon and the occupant access to the unit without the con-

sent or cooperation of the other. The occupant can regain complete access by the payment of the rent. Both can, and Astrozon did, gain access by cutting the other's lock. It was the practice of Astrozon to "over-lock" a unit when the rent was ten days overdue, and the unit was "over-locked" on August 29, 1989, at the time of the first search.

Astrozon had never taken any action to limit the occupant's access to the storage unit other than to "over-lock" prior to consenting to the search and took no formal action to terminate the rental agreement until October 6, 1989, well after the execution of the search warrant.

There had been a series of burglaries of, and thefts from, self-storage units in or near Colorado Springs including those operated by Astrozon. Astrozon managers provided information to the police which, together with other information, caused suspicion to focus on the occupants of the storage unit and on the storage unit as a possible repository of stolen property.

On August 28, 1989, an Astrozon manager advised the investigating officer that the August rent had not been paid on the storage unit and that Astrozon had "over-locked" the unit. The officer testified that he understood that the rent was three or four months in arrears, which is understandable because the managers had stated that the rent had been late a number of times in 1989. The investigating officer inquired further and reviewed the records relating to the unit which established that the occupant had paid rent through July 31, but had not paid rent for August. An Astrozon manager testified that she believed that Astrozon was allowed access to the unit if a tenant was more than 30 days delinquent with rent, which was consistent with the lien statute, but which was not yet the case on August 28, 1989. The officer contacted a supervisor and later a deputy district attorney to ascertain whether, in their opinion, the landlord could legally consent to a search of the storage unit. Both agreed that the operator could let him into the unit.

The officer returned to Astrozon on August 29, 1989, and asked if he could enter and search the storage unit. Astrozon, through its managers, gave both oral and written consent, cut the occupant's lock, and opened the storage unit for the officer. The officer entered the storage unit and observed its contents, which did not include any stolen property, but did include personal property of unspecified interest to the officer. The officer left the unit undisturbed, and the co-manager re-locked it.

Officers searched the unit two additional times without a search warrant, and then on September 15 with a search warrant. The officers found and removed documents from the unit which were offered and received into evidence at defendant's trial.

The trial court found that defendant had not abandoned the property or the storage unit and had standing to challenge the searches. Because the transcript of this proceeding is not available on appeal, we are bound by the trial court's findings. I perceive that they may be more far-reaching than does the majority.

Defendant contends that the trial court erred in failing to suppress the evidence seized from the storage unit as the fruits of a warrantless search in violation of the Fourth Amendment. I agree.

I.

The initial inquiry is whether Astrozon, acting through its managers, had the authority in its own right to consent to a search of the storage unit. I conclude that it did not.

Generally, a warrantless search predicated on the consent of a landlord is not valid. The Supreme Court in *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), held that the consent of a landlord who had a common law right of access to prevent waste could not form the basis of a warrantless search of a residence for distillery equipment.

Our supreme court in *People v. Brewer*, 690 P.2d 860 (Colo.1984) held that a landlord cannot give a valid consent to search a tenant's premises. In addition, the court held that the good faith exception to a warrantless search in such a situation did not apply because the officers made a mistake of law and

not of fact. *See* § 16–3–308, C.R.S. (1986 Repl.Vol. 8A) (good faith mistake of fact exception to warrant requirement).

The majority relies, in part, on *People v. Montoya*, 914 P.2d 491 (Colo.App.1995), for the proposition that a landlord may have actual authority in some instances. In *Montoya*, a division of this court held that an occupant of a motel room has a reduced expectancy of privacy after the rental period has expired without any granting of overtime privileges. The hotel-motel business is significantly different from the rental of self-storage units. In the hotel-motel context the room is rented for a short stated period of time at the expiration of which it will normally be immediately rented to another occupant who may have already reserved the privilege. The short duration of occupancy and expectation of immediate turnover serve to reduce the expectancy of privacy of a guest following the expiration of the term in a hotel-motel context.

Here, given that long-term occupancy is the norm and that tolerance for late payment of rent has been demonstrated, there was no reduction in the expectancy of privacy under the circumstances. In addition, an exception noted in the authority relied upon by the court in *Montoya* is when the hotel or motel has tolerated late payment or overtime stays without permission in the past. *See United States v. Owens*, 782 F.2d 146 (10th Cir. 1986).

I also find *United States v. Reyes*, 908 F.2d 281 (8th Cir.1990), relating to an expectancy of privacy in a bus terminal storage locker after expiration of the term, similarly unpersuasive. Both *United States v. Elliott*, 50 F.3d 180 (2d Cir.1995) and *United States v. Williams*, 523 F.2d 64 (8th Cir.1975), cited by the majority, turn on abandonment which, as the trial court found, did not occur here.

In my view, Astrozon, as owner or landlord, did not have actual authority to consent to the search of the unit.

## II.

The majority concludes that a valid third party consent was obtained based on "apparent authority;" the officer had an objectively reasonable good faith belief that Astrozon, acting through its managers, had actual authority to consent to a search. This apparent authority arises, in the view of the majority, because there had been a breach of the lease or rental agreement.

Generally, a valid consent for a search may be obtained either from the individual who has actual authority to consent—the person whose property is searched—or from a third party who has common authority over the property—a person who has joint access or control over the property for most purposes. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock*, the Supreme Court held that the consent search of a bedroom by a cohabitant having "common authority" was binding on the defendant. There, the defendant granted, either expressly or by implication, the common authority held by the third party.

In *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court extended the common authority doctrine, adopted the concept of "apparent authority," and approved a warrantless search based on the officers' objectively reasonable good faith, yet mistaken, belief, after inquiry, that the consenting third party cohabited the premises with the defendant and therefore had "common authority" to consent to a search.

Our supreme court has recently addressed third party consents to search in *People v. Breidenbach*, 875 P.2d 879 (Colo.1994); *People v. Hopkins*, 870 P.2d 478 (Colo.1994); and *People v. McKinstrey*, 852 P.2d 467 (Colo. 1993); *see* 3 W. LaFave, *Search and Seizure* § 8.3(g) (3d ed. 1996).

In *Breidenbach*, a third party gave consent to search the common area of a parcel of land containing two residences. A non-residential owner (defendant's father) and the occupant of one of the residences (defendant's brother) gave the consent, each having "common authority" over the common areas.

In *Hopkins*, officers searched a "fanny pack" with the consent of the person who possessed it with the knowledge and consent of the defendant at the time of the request. Only after the discovery of drugs did the

consenting party say the "fanny pack" was not his and identified the defendant as the owner. The court's rationale was that the owner had a diminished expectancy of privacy in personal property when he relinquished exclusive control to another. Furthermore, the court found that it was unreasonable to expect the officer to ascertain the actual title to such property when such a determination is difficult in the best of circumstances.

In *McKinstrey,* the defendant advised the officer that he occupied the cabin with the consent of a Mr. Sanchez. Later, the officer obtained a consent to search from a neighbor who had a key to the cabin and professed to be, along with Mr. Sanchez, a partial owner. The court concluded that the neighbor did not have "joint access or control for most purposes" and, therefore, no actual "common authority" to give a binding third party consent. The court remanded to the trial court for a determination of whether the officer had an objectively reasonable good faith belief that the third party had authority to consent to the search as required by *Rodriguez.*

In *Rodriguez, Hopkins,* and *Breidenbach,* the "apparent authority" was, in some manner, conferred by the defendant or existed with the knowledge and consent of the defendant. In *McKinstrey,* the defendant occupied the property on an informal basis with the alleged consent of one of the co-owners; another co-owner, who demonstrated authority over the property both prior to and at the time of the defendant's occupancy, gave the consent to search.

In this instance, defendant's right of occupancy and his relationship to Astrozon were formal and pursuant to a written contract. That rental agreement granted the occupant exclusive use of the unit to the exclusion of Astrozon except for limited rights of entry for maintenance. The breach of that agreement by the failure to pay rent, or otherwise, might, under other circumstances, result in an abandonment or act to defeat standing, but the trial court concluded that no abandonment had occurred and defendant had standing.

The breach by failure to pay rent in a timely manner was common in the contractu-al relationship between Astrozon and the occupant. Astrozon had tolerated this breach on several occasions and for periods substantially greater than had occurred at the time of the search without reentering the unit or taking any formal action to terminate the agreement.

The practice of "over-locking," without more, excludes both Astrozon and the occupant without the consent of the other. Astrozon never took any action beyond "over-locking," and, more importantly, there is no evidence that Astrozon had any present intent to take further action with respect to the unit prior to the officer's request for a consent to search. *See Chapman v. United States, supra* (landlord may have had the right to enter to prevent waste, but that was not the reason for the entry). Astrozon took no further action with respect to the unit until October 6, 1989, or more than two months after the consent to search was given.

The Fourth Amendment interest to be protected is the occupant's objective expectation of privacy.

In my view, the question whether any consent search based on an objectively reasonable good faith, but mistaken, belief of the investigating officer with respect to the actual authority of a landlord was one of law, not of fact. *United States v. Brown,* 961 F.2d 1039 (2d Cir.1992); *People v. Brewer, supra.*

It is anomalous to me that a landlord without authority to consent to a search as a matter of law can have "apparent authority" based on a breach of the rental agreement of short duration as common and tolerated as the failure to pay rent. Many people live in rented quarters, work in rented offices, and store property in rented premises. If such a breach of the lease or rental agreement, without more, or any careless or incorrect representations by the landlord as to the status of the lease to an officer who accepts them in good faith, can confer "apparent authority" on a landlord, then the right to be secure from unreasonable searches and seizures will be severely diluted. The anomaly, of course, is that a landlord under these circumstances can accomplish what the mag-

istrate is incapable of doing, that is, consent to the search without probable cause.

In addition, I am concerned that Astrozon was a nominal victim of the crimes under investigation at the time of the consent. It was the Astrozon managers who gave the consent that provided the officer with the information which caused the officer's interest to center on the storage unit, which, in fact, contained no stolen property. At the time of the consent, the managers were active participants in the investigation. The consent in this case was given by antagonistic strangers.

In my view, the landlord, as such, has no power as a matter of law to grant a consent to search.

I would reverse the conviction and remand with orders to grant the defendant's motion to suppress.