William Hansel BUTLER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

March 26, 1976.

Terrence R. Fitzgerald, Deputy Public Defender, Paul G. Tobin, Jefferson Dist. Defender, Bart Adams, Staff Atty., Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Carl T. Miller, Jr., Deputy Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

William Hansel Butler appeals from a judgment entered in accordance with a verdict finding him guilty on two counts of armed robbery [1] and fixing his sentence at life imprisonment on each.

The only argument with enough substantiality to justify discussion is that the fruits of an illegal search were admitted in evidence against him.

The robberies took place at a pawn shop in Louisville on July 24, 1974. Two days later, acting on a tip from an unidentified source to the effect that one of the robbers was at 1721A Harrod Court in Louisville, detectives of the Louisville Police Department went to that address and knocked on the door. They did not have a search warrant or an arrest warrant. The door was opened by a young lady. The officers told her they were looking for Butler and asked if they could look inside, to which she re-

1. KRS 433.140 (now repealed and superseded by the Kentucky Penal Code).

plied, "Sure," and let them in. They found Butler lying under a pile of clothes in a bedroom closet and arrested him. Shortly thereafter, continuing to search the vicinity, they discovered under the pile of clothing some boxes of .38-calibre cartridges and, in a coat hanging immediately above where Butler had been hiding, a .38-calibre pistol. The pistol and shells were identified at the trial as having been stolen during the robbery at the pawn shop.

The premises in question were identified at the trial as the apartment of one Carolyn Macklin, with whom Butler had lived for several years, and who was the mother of his child. Some weeks prior to the arrest, however, there had been trouble between Butler and Carolyn, and she had put him out and caused him to be placed under a peace bond. On the night before he was arrested she met him at a tavern and apparently permitted him to go back to her apartment, and they stayed there together that night. On the next night, when he was arrested, she was not at home. The young lady who answered at the door and let the detectives in was a babysitter. Though it is not expressly established in the record, we assume that the babysitter was employed by Carolyn alone. There was no evidence tending to identify what, if any, child or children were present under her care.

■ From the foregoing circumstances it seems clear that Butler was in the apartment by permission of Carolyn. He therefore had standing to challenge the legality of the search. *Jones v. United States*, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Assuming for sake of the argument that the arrest itself was unlawful as not supported by probable cause,[2] the search cannot be upheld as incident to a lawful arrest. The question, then, is whether it can be upheld on the basis of the babysitter's consent.

■ Consent to a search may be given by a third party who has "common authority over or other sufficient relationship *to the premises* or effects sought to be inspected." (Emphasis added.) *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). See also annotation, *Authority to consent for another*[3] *to search or seizure*, 31 A.L.R.2d 1078 (1953).

■ In *People v. Misquez*, 152 Cal.App.2d 471, 313 P.2d 206 (1957), a search of the absent defendant's home was upheld on the strength of his babysitter's permission. A contrary result was reached in the more recent case of *People v. Litwin*, 44 A.D.2d 492, 355 N.Y.S.2d 646 (1973). Both of these cases involved the tenant himself, whereas this case involves the status of one who was, at the moment at least, a casual visitor. The decisions thus far rendered by the United States Supreme Court do not resolve the problem, but we think it is reasonable to assess the consent in terms not only of the status of the party who gave it, but also the status of the party whose rights are affected by it. That is, if we assume that a babysitter's consent should not be valid with respect to the master of the house, it does not follow that it should not be held good as against someone whose reliance upon the security of the Fourth Amendment is less justified and of less social importance.

In *Garr v. Commonwealth*, Ky., 463 S.W.2d 109, 114 (1971), the defendant and his sister lived in the home of their parents. The sister allowed the police to search the defendant's room. After a careful review of the precedents then available we held the search valid on the theory that the sister's authority over the premises was at least equal to and coextensive with that of the defendant. In this instance we think the status of Butler relative to that of the babysitter was ever more tenuous, and that as between the two the babysitter had the

---

2. Cf. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Iles v. Commonwealth*, Ky., 476 S.W.2d 170 (1972).

3. We do not accede to the connotation that the consent is given "for another," in the sense that it waives someone else's rights.

superior right of dominion and control, and the right to permit the search.

 Another question that often figures in the resolution of search and seizure cases is whether the police should reasonably be expected to have procured a warrant, which depends of course on the exigencies of the moment. Strictly speaking, it ought not to be relevant when the legality of the search depends entirely on permission, as in this instance,[4] but if and to the extent that it is relevant, the answer is that when the object of a search is a suspected armed robber in hiding time certainly is of the essence.[5]

The judgment is affirmed.

All concur.

---

4. See, however, the dissenting opinion of Mr. Justice Douglas in *United States v. Matlock,* 415 U.S. 164, 178, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

5. Whether the police officers actually had sufficient probable cause to arrest the suspect is, we think, clearly irrelevant to the question of whether they had ample time in which to apply for a warrant to search the premises.