The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Willie HOPKINS, Defendant–Appellee.

No. 93SA263.

Supreme Court of Colorado, En Banc.

April 4, 1994.

Robert S. Grant, Dist. Atty., Michael J. Milne, Sr. Deputy Dist. Atty., Gary Pirosko, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Joni E. Speirs, Deputy State Public Defender, Brighton, for defendant-appellee.

Chief Justice ROVIRA delivered the Opinion of the Court.

The People bring this interlocutory appeal from the trial court's order suppressing evidence obtained from a warrantless search of Willie Hopkins' (defendant) fanny pack. The People argue that the trial court erred in suppressing statements made by defendant and evidence seized by applying the wrong legal standard for determining when a law enforcement official may conduct a search based upon the consent of a third party who does not have actual authority over that property. Because we conclude that the trial court erred and that the record before us is sufficient to determine that the search was reasonable, we reverse the trial court's order.

## I

In July 1992, Sergeant Sederberg of the Aurora Police Department summoned officers Valko and Junnila to Joliet Street in Aurora to investigate a fireworks complaint. After knocking on an apartment door where the parties thought to be involved were believed to have gone, and receiving no response, the officers returned to their vehicles. As they returned, defendant and two friends, Stephen Green and Carla Morton, approached the officers. Defendant asked why the officers had gone to the apartment and they informed him of the fireworks complaint.

The officers requested identification from defendant and he replied that it was in his apartment. Officer Junnila accompanied defendant to his apartment to retrieve his identification. The officers who remained with Green and Morton asked for their identification and both replied that they had none. Officer Valko, believing that the closed, black leather fanny pack which Green was carrying might contain identification, asked Green if he could look into the pack. Green said, "Sure, if you want to," and handed the pack to Valko.

Inside the pack, Valko discovered a clear vial of white rocks believed, and later confirmed to be crack cocaine, marijuana, and identification belonging to defendant and a woman.[1]

Green told Valko that the drugs were not his and that he was not going to "take the fall for anyone." He then said that the pack belonged to defendant who had handed it to him and asked him to carry it as they approached the officers. Morton corroborated Green's account.

When defendant returned, Valko asked if the pack was his and he replied that it was. Defendant was then told that he was under arrest for possession of a controlled substance and advised of his Miranda rights. Valko then informed defendant that drugs

---

1. At the suppression hearing Valko testified that he was interested primarily in whether the fanny pack contained identification and did not ask to search the pack for any safety reasons.

and his identification were found in the pack.[2]

Defendant was charged with unlawful possession of a schedule II controlled substance. § 18–18–204, 8B C.R.S. (1993 Supp.). He filed a motion to suppress statements and evidence obtained by the police officers which was granted.

## II

The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution establish the right to be free from unreasonable searches and seizures. U.S. Const.Amend. IV; Colo. Const. art. II, § 7. These guarantees generally proscribe the warrantless search of a person's home or property whether to make an arrest or search for specific objects. *See Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990); *People v. McKinstrey,* 852 P.2d 467, 470 (Colo.1993). Among the exceptions to the prohibition against warrantless searches are situations in which voluntary consent to a search has been obtained. *Rodriguez,* 497 U.S. at 181, 110 S.Ct. at 2797; *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *McKinstrey,* 852 P.2d at 470. Valid consent may be obtained either from the individual whose property is searched, or from a third party who possesses common authority over the property. *Rodriguez, supra; McKinstrey, supra.*

In *Rodriguez,* the Supreme Court addressed the question of "[w]hether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." *Rodriguez,* 497 U.S. at 179, 110 S.Ct. at 2796. In *Rodriguez,* Gail Fischer reported to the police that Rodriguez had assaulted her in an apartment. Fischer told the police that Rodriguez was then asleep in the apartment and agreed to go there with them in order to unlock the door with her key so that the officers could arrest him. Fischer referred to the apartment several times as "our" apartment and said she had clothes and furniture there.

After entering the apartment with the aid and permission of Fischer, the officers observed in plain view cocaine and drug paraphernalia. The officers arrested Rodriguez and seized the contraband. The officers did not obtain an arrest warrant for Rodriguez or a search warrant for the apartment.

After determining that Fischer did not possess common authority to validly consent to a search of the apartment, *id.* at 181–82, 110 S.Ct. at 2797, the Court addressed the prosecution's argument that the search was nevertheless valid because the officers reasonably believed that Fischer had the authority to consent to the search. *Id.* at 183–89, 110 S.Ct. at 2798–2801. *Rodriguez* held:

> As with other factual determinations bearing upon search and seizure, determinations of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 188–89, 110 S.Ct. at 2801 (citations omitted). In reaching the conclusion that apparent authority to consent to a search, when reasonably relied on by law enforcement officials to be actual authority,[3] renders

---

**2.** After Valko asked defendant if he wished to talk to the officers without an attorney present, defendant began talking without answering any specific questions the officers asked. Defendant stated he had lent the pack to a friend about thirty minutes before meeting the officers and that the friend must have placed the drugs in the pack. Defendant did not elaborate on who his friend was or where he could be found.

**3.** The terms "apparent" and "actual" authority are not intended to imply that the particularized

meanings associated with these terms as developed in the law of agency are applicable in evaluating the constitutionality of a consent search. To the contrary, we use these terms in the same way that the United States Supreme Court used them in *Rodriguez,* i.e., to differentiate between situations in which a consenting party actually possesses common authority over property from situations in which it reasonably appears, based on all the surrounding circum-

a search based on that consent constitutional, the Court explained,

> that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.
>
> . . . .
>
> We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably.

*Id.* at 185–86, 110 S.Ct. at 2799–2800. *See also Maryland v. Garrison,* 480 U.S. 79, 86–88, 107 S.Ct. 1013, 1017–1018, 94 L.Ed.2d 72 (1987) (holding that reasonableness does not require factual correctness); *Hill v. California,* 401 U.S. 797, 803–05, 91 S.Ct. 1106, 1110–11, 28 L.Ed.2d 484 (1971) (same); *People v. McKinstrey,* 852 P.2d at 471 (same).

■ "Thus, under *Rodriguez,* a warrantless search is not invalid merely because of a reasonable good-faith mistake of fact by the officers concerning the authority of the party consenting to the search." *McKinstrey,* 852 P.2d at 472 (footnote omitted).

We applied the holding of *Rodriguez* in *People v. McKinstrey.* In *McKinstrey,* a police officer noticed a car parked at an unoccupied cabin in Grand County. The officer, who had previously investigated a break-in at the cabin, stopped to investigate. McKinstrey came out of the cabin, approached the officer, identified himself and said that he had permission to be there.

McKinstrey stated that he had been dropped off by a friend who had left for a walk. The officer then contacted Frank Drumm, a neighbor who lived in a nearby cabin, who stated that McKinstrey had arrived alone and unloaded what appeared to be computer equipment from his car. The officer then ran an outstanding warrants check and learned that McKinstrey had several outstanding warrants. After a backup arrived, the two officers returned to the cabin and attempted to contact McKinstrey. After getting no response, the officers entered the cabin through the open front door, conducted a cursory search and left.

Drumm, who had accompanied the officers to the cabin, volunteered that he had a key to the cabin and was its partial owner. Drumm granted the officers permission to search the cabin. McKinstrey was later arrested after the officers executed a search and discovered drugs and stolen property. *Id.* at 468–69.

McKinstrey sought to suppress the evidence on the grounds that it was obtained in violation of his right against unreasonable searches and seizures. The trial court agreed, concluding that Drumm did not have actual authority to consent to the search of the cabin.

Relying on *Rodriguez,* we held that a warrantless search is not invalid under the Fourth Amendment merely because of a reasonable, good-faith mistake of fact by the officers concerning the authority of the party consenting to the search. *McKinstrey,* 852 P.2d at 471 (citing *Rodriguez* ). We additionally concluded that in granting defendant's motion to suppress, the trial court failed to apply the proper test for determining whether the officers' reliance on Drumm's consent violated the Fourth Amendment, i.e., the test set forth in *Rodriguez. Id.* at 473. Thus, we reversed the trial court's order in part [4] and remanded the case for a determination of whether it was reasonable for the officers to conclude that Drumm had the authority to consent to search of the cabin, even if he did

---

stances, that the consenter has such authority though, in fact, he does not.

**4.** We agreed with the trial court's ruling that based on the record, the People had failed to

establish that Drumm had joint access or control for most purposes of the cabin. *McKinstrey,* 852 P.2d at 471.

not in fact have that authority. *Id.* at 474–75.

## III

Based on the principles set forth in *Rodriguez* and recognized in *McKinstrey*, we conclude that the trial court erred in suppressing the evidence and statements made as a result of Green's consent to the officer's search of the pack. As in *McKinstrey*, we conclude that the trial court in this case failed to apply the appropriate test for determining whether Valko reasonably believed that Green had the authority to consent to a search of the fanny pack. Unlike *McKinstrey*, however, we conclude that this case need not be remanded to the trial court because the record before us is sufficient to determine that Valko's reliance on Green's consent was objectively reasonable as a matter of law and thus, the officer's search of the pack did not violate defendant's right to be free from unreasonable searches and seizures. *See United States v. Rich*, 992 F.2d 502, 505 (5th Cir.) (reasonableness under Fourth Amendment is a question of law subject to de novo review), *cert. denied,* — U.S. ——, 114 S.Ct. 348, 126 L.Ed.2d 312 (1993); *United States v. Evans*, 937 F.2d 1534, 1536–37 (10th Cir.1991) (same); *McKinstrey*, 852 P.2d at 473 n. 6 ("the question of objective reasonableness under *Rodriguez* is a question of law that is subject to de novo review").

## A

At the suppression hearing the trial court concluded that "the only issue is whether or not in fact, the officer had a right to look into the fanny pack and whether or not, in fact, Mr. Green had authority to consent." The court concluded that because Green lacked authority to grant consent to search the pack, the requirements of the third party consent doctrine had not been satisfied. The prosecutor, citing *Rodriguez* and *McKinstrey*, argued that the search was valid because the officers properly relied on Green's apparent authority to grant consent to search the pack.

■ After reviewing *McKinstrey*, the trial court remarked that the United States Supreme Court "has never used apparent authority as a standard to determine whether or not, in fact, an individual has the right to give consent." The court then concluded that the legal standard for determining whether the evidence should be suppressed under *Rodriguez*,

> is whether or not, in fact, the individual giving the consent has some right of control of the property. Whether or not, in fact, there is some expectation of privacy. Whether or not, in fact, he has the authority set forth for—allowed by the one having ownership of the property to allow for access to the fanny pack. Whether or not they had joint access or control of the property. Whether or not, in fact, he has the right to enter into the fanny pack and obtain the item in question.

As this passage makes clear, the trial court did not apply the principles set forth in *Rodriguez* and *McKinstrey*. As such, the trial court erred in failing to consider whether Valko reasonably relied on Green's consent to search the pack regardless of whether Green had actual authority to give that consent. *See United States v. Salinas–Cano*, 959 F.2d 861, 865 (10th Cir.1992) (where police knew that the apartment searched was rented by the consenter and that the suitcase therein belonged to defendant, the information known to the officers was insufficient to support a reasonable belief in the consenter's authority, and the apparent authority exception to the warrant requirement is inapplicable); *Kennedy v. State*, 578 N.E.2d 633, 638 (Ind.1991) (search of gym bag constitutional under *Rodriguez* where police reasonably believed that consenting party had sufficient authority to consent to a search of the bag), *cert. denied,* — U.S. ——, 112 S.Ct. 1299, 117 L.Ed.2d 521 (1992); *Cowart v. State*, 579 So.2d 1, 5 (Ala.Cr.App.1990) ("adopting *Rodriguez* analysis for the warrantless search of personal effects, as well as premises, where the search occurred under a 'reasonable' belief of 'apparent authority' of a consenting third-party").[5]

---

5. When the police have no reason to believe that the personal effects possessed by the consenter

## B

■ The evidence establishes Valko's objective, reasonable belief that Green had authority to consent to a search of the pack. While the uncontradicted evidence showed that defendant handed Green the pack before they encountered the officers, there is no indication that any of the officers observed this exchange. To the contrary, Valko testified that neither the defendant nor Morton was carrying anything but that Green was holding a pack as he approached the officers. The pack was wrapped around Green's hand and nothing about the pack itself or the manner in which Green carried it cast any doubt as to whether he projected "an aura of authority" or "necessary appearance of authority" to consent to a search of the pack. See McKinstrey, 852 P.2d at 472 (quoting United States v. Rosario, 962 F.2d 733, 738 (7th Cir.1992)); People v. Berow, 688 P.2d 1123, 1127 (Colo.1984).

After Valko asked Green if he could search the pack, Green neither stated nor gave any indication that the pack was not his. Rather, he simply told the officer he could search it if he wished and handed him the pack. Thus, it is not surprising that Valko did not inquire as to who owned the pack because he simply "assumed that it belonged to Green at the time." In short, the officers encountered no ambiguous circumstances regarding Green's authority to consent to the search which would have required them to make further inquiries regarding authority over the pack. Rosario, 962 F.2d at 738 (stating that absent "sufficient facts, officers have a duty to seek further information to determine whether they may reasonably infer that the inviter has the necessary authority to consent to [the search]").

Defendant argues that the trial court correctly concluded that Green did not have actual authority to do anything with the pack other than hold it for defendant and had no right to consent to a search of the pack. Be that as it may, actual authority is distinguishable from, and need not be established in order to show that Green possessed sufficient indicia of authority to consent to the search which the officers reasonably relied on. Defendant also argues that because Green stated that he had no identification, and Valko testified that he sought to search the pack to see if there was any identification in it, it should have occurred to the officer that the pack may not have been Green's and thus, Valko should have inquired as to who owned the pack. We disagree. Given the facts known to Valko at the time, we are of the opinion that Green's statement that he had no identification did not cast doubt on whether Green had the authority to consent to a search of the pack, but rather, raised suspicions regarding Green's candor and frankness. Thus, we reject defendant's contention that the circumstances regarding ownership of the pack were ambiguous and required Valko to inquire of Green whether he owned the pack.

Based on the information known to Valko at the time he sought Green's consent to search the pack, we conclude that Valko's assumption that Green was the owner of the pack and had the authority to consent to a search of the pack was objectively reasonable. Accordingly, defendant's right to be free from unreasonable searches and seizures was not violated.

are not his, the police reasonably may rely on the possessor's consent based on the appearance of ownership. See 3 Wayne R. LaFave, Search and Seizure § 8.6(a), at 317 (2d ed. 1987). As an "excellent illustration of this point," LaFave summarizes the case of United States v. Miles, 480 F.2d 1217 (9th Cir.1973), as follows:

The defendant was employed as a driver's helper on a United Van Lines moving van which was being loaded with household goods at an army base. While the defendant and another helper remained at the residence packing more household goods, the driver took the van to another part of the base to have it weighed. Because the truck scale was located in a restricted area, security guards told the driver the truck would have to be searched; the driver consented, and thereafter specifically agreed to the opening of a suitcase the guards found in the passenger section of the van. Only when a sawed-off shotgun was discovered in the suitcase did the driver advise the guards that the case belonged to his helper. The court, in upholding the search, quite properly viewed the issue as being whether the guard had reason to believe the driver was consenting to search of his own property, rather than whether the defendant had assumed the risk.

3 Search and Seizure § 8.6(a), at 317.

Order reversed and case remanded for further proceedings.

ERICKSON, J., specially concurs, and VOLLACK, J., joins in the special concurrence.

Justice ERICKSON specially concurring:

I concur that the evidence obtained from the fanny pack should not have been suppressed but I do not agree with the majority's Fourth Amendment analysis. Steven Green (Green) gave his consent to the officers to search Willie Hopkins' (Hopkins) fanny pack. In my view, the only issue in this case is the validity of Green's consent to search a small item of personal property that he possessed. I agree that the judgment of the trial court should be reversed and that the case must be remanded for further proceedings.

The Fourth Amendment to the United States Constitution prohibits warrantless and unreasonable searches of an individual's home or property. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990); *Payton v. New York*, 445 U.S. 573, 583–86, 100 S.Ct. 1371, 1378–80, 63 L.Ed.2d 639 (1980); *People v. McKinstrey*, 852 P.2d 467, 470 (Colo.1993). A warrant is not required when consent is voluntarily given to search an individual's property. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). When consent is obtained from a third party with common authority over the property, no warrant is required. *See Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797; *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *McKinstrey*, 852 P.2d at 471.

Most courts, in addressing the issue of third-party consent, have done so in the context of a search of residential property.[1] The issue generally centers on whether the consenting party had authority to let police officers search a residence he or she does not own, or has the exclusive right to occupy, possess, or control. *See, e.g., Rodriguez*, 497 U.S. at 177, 110 S.Ct. at 2793; *Matlock*, 415 U.S. at 164, 94 S.Ct. at 988; *McKinstrey*, 852 P.2d at 467. The common issue addressed in the cases cited above is whether the searching officer reasonably believed that the consenting party had "common authority" over the premises. *Rodriguez,* 497 U.S. at 185–86, 110 S.Ct. at 2799–2800.

The notion of common authority is derived, however, from the control the consenting party has over the premises. In *Matlock,* the United States Supreme Court stated:

> Common authority is of course, not to be implied from the mere property interest that a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (citations omitted).

In this case, unlike nearly all of the other cases that have addressed third-party consent, the search was of a small item of personal property—a fanny pack. The crucial aspect of third-party consent cases is not the relationship between the defendant and the consenting party. The keystone is the consenting party's control over the area or property in question. An example of how control influences the validity of consent is demonstrated by cases in which a child consents to a search of a residence. Courts are generally unwilling to uphold a child's consent to search a residence, either because the child

---

1. The courts that have addressed the issue of third-party consent often also address the relationship between the consenting party and the party that actually owns the residence or has access to the property. *See Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (consent by a relative); *United States v. Duran*, 957 F.2d 499 (7th Cir.1992) (husband-wife relationship); *United States v. Clutter*, 914 F.2d 775 (6th Cir.1990) (parent-child relationship), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991); *Butler v. Commonwealth*, 536 S.W.2d 139 (Ky.1976) (consent by baby-sitter).

does not have control and dominion over his parents' residence, or because the child is incapable of informed consent. *See State v. Malcolm*, 58 Del. 1, 203 A.2d 270 (1964); *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). Similarly, although some courts allow a parent to consent to the search of a child's room, *see State v. Kelly*, 284 N.W.2d 236 (Iowa 1979), if the room is under the exclusive control of the child, his expectation of privacy is increased and the consent of a parent or third-party is invalid. *See In re Scott K*, 24 Cal.3d 395, 155 Cal.Rptr. 671, 595 P.2d 105, *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979); *People v. Flowers*, 23 Mich.App. 523, 179 N.W.2d 56 (1970). Likewise, a landlord or hotel owner cannot consent to a search unless the defendant has relinquished control of the property by abandonment, eviction, or by the termination or expiration of his lease. *See Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Able v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *State v. Carillo*, 26 Ariz.App. 113, 546 P.2d 838 (1976); *Jones v. State*, 332 So.2d 615 (Fla.1976); *State v. O'Bryan*, 96 Idaho 548, 531 P.2d 1193 (1975); *People v. Reed*, 393 Mich. 342, 224 N.W.2d 867, *cert. denied*, 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1975).

The same principle that is applied to searches of premises may be applied to searches of personal property. Personal property has fewer of the traditional indicia of ownership that are recognized in the occupancy of residential property. In other words, it is far easier for the non-owner to exercise control over a small, easily moveable item of personal property, such as a fanny pack, than it is to exercise control over real property or a residence. The ease of control creates a dilemma not obvious in cases involving third-party consent to search a residence. In determining title or the right to possess small items of personal property, it is difficult, if not impossible in some cases, to resolve the question of ownership. As a result of this dilemma, the analysis must be modified.

Circumstances analogous to the instant case were presented to the United States Supreme Court in *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). In *Frazier*, the controversy centered around a duffel bag that was used jointly by the petitioner and his cousin, Rawls. The police, while arresting Rawls for murder, asked for the cousin's clothes. Rawls directed the police to the duffel bag and both Rawls and his mother consented to the search of the duffel bag. The police found evidence incriminating the petitioner in the duffel bag. The petitioner claimed that the police illegally searched and seized the clothing found in the duffel bag. The Court stated:

> Petitioner's final contention can be dismissed rather quickly. He argues that the trial judge erred in permitting some clothing seized from petitioner's duffel bag to be introduced into evidence. This duffel bag was being used jointly by petitioner and his cousin Rawls and it had been in Rawls' home. The police, while arresting Rawls, asked him if they could have his clothing. They were directed to the duffel bag and both Rawls and his mother consented to the search. During this search, the officers came upon petitioner's clothing and it was seized as well. Since Rawls was a joint user of the bag, he clearly had authority to consent to its search. The officers therefore found evidence against petitioner while in the course of an otherwise lawful search. Under this Court's past decisions, they were clearly permitted to seize it. *Petitioner argues that Rawls only had actual permission to use one compartment of the bag and that he had no authority to consent to a search of the other compartments. We will not, however, engage in such metaphysical subtleties in judging the efficacy of Rawls' consent. Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside.*

*Frazier*, 394 U.S. at 740, 89 S.Ct. at 1425 (emphasis added).

Personal property of this nature does not carry with it the expectation of privacy concomitant to that of a residence or even of an automobile. As *Frazier* demonstrates, in allowing Green to carry the fanny pack, Hop-

kins assumed the risk that Green would allow someone else to look inside. *See also Payton*, 445 U.S. at 587, 100 S.Ct. at 1380 (stating that intrusion into a residence represents a greater invasion of privacy than seizure of property "found in a public place"). In relinquishing his control of the fanny pack, Hopkins demonstrated his diminished expectation of privacy. *See Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (stating that the existence of co-inhabitants of a residence indicates that the others have "assumed the risk that one of their number might permit the common area to be searched"); *see also California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (recognizing the difference in privacy interests between the search of an automobile, a movable object, and the search of an immovable structure); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (same).

In my view, the fact that the actual owner has relinquished exclusive control by sharing the item of personal property with another is evidence of a diminished expectation of privacy. It is unreasonable to require police officers to determine title, or to obtain some other indicia of ownership, of every object they search in order to validate a consensual search of small, easily transferred items of personal property.[2]

Possession of a small item of personal property of this type carries with it the presumption of ownership because possession of personal property by the consenting party demonstrates substantial control.[3] Green did nothing that would indicate that he was not, in fact, the owner of the fanny pack. He immediately offered the pack to the officer and consented to the search. The officer acted reasonably, without coercion, and with the utmost good faith when he asked Green if he could examine the fanny pack that Green had in his hand. *See McKinstrey*, 852 P.2d at 472 n. 7 (stating that an officers good-faith

belief that a third party had apparent authority to consent to a search is sufficient if the belief is objectively reasonable).

In my view, because Hopkins delivered possession of the fanny pack to Green, he assumed the risk that Green would permit someone to look inside the fanny pack. Green had exclusive control over the fanny pack when he consented to the search, and the search was valid. The trial court's suppression of evidence should be reversed and the case remanded to the trial court for further proceedings.

VOLLACK, J., joins in this special concurrence.

---

**2.** In the market-place, a formal passage of title is not required to create valid ownership. Under the Colorado Uniform Commercial Code, title to personal property passes upon delivery of goods. § 4–2–401(2), 2 C.R.S. (1992).

**3.** In my view, the presumption can be overcome by an affirmative statement by the individual in possession of the personal property that he does

not own and cannot validly consent to the search. Although possession is strong indicia of control, and will be dispositive in most cases, each search must be determined under the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).