**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Daniel Joseph WALTER, Defendant–**
**Appellant.**

No. 93CA1166.

Colorado Court of Appeals,
Div. II.

Dec. 1, 1994.

Rehearing Denied Jan. 12, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Mary Kane & Associates, P.C., Margaret L. Olnek, Denver, for defendant-appellant.

Opinion by Judge ROY.

Defendant, Daniel Joseph Walter, appeals a judgment of conviction entered after the trial court found him guilty of possession of marijuana with intent to distribute. The sole issue on appeal is whether the trial court erred in denying the defendant's motion to suppress evidence seized from his residence. We reverse and remand for further proceedings.

Defendant and his wife hired a 15–year–old girl as a daytime babysitter to care for their three children during spring vacation. Defendant's 12–year–old son showed the babysitter some marijuana and drug paraphernalia in defendant's bedroom. The babysitter telephoned her mother who came to defendant's residence and telephoned the police.

Upon arrival, a police officer was admitted into the residence by the babysitter's mother. After entering, the officer ascertained that the babysitter and her mother did not live at the premises. It is undisputed that the babysitter, her mother, and defendant's two small daughters were the only persons present at the residence. Defendant's son had left the residence in the interim.

The babysitter and her mother took the officer upstairs to defendant's bedroom. The door to the bedroom was partially open, and the officer could see a lock box on the bed, but could not see its contents. Upon entering the bedroom with the babysitter, the officer probed the lock box containing plastic bags of material, and the babysitter showed the officer a vial of pills on the bureau and a scale and other items in the closet. The babysitter began to rummage around in the closet until the officer instructed her not to disturb anything.

The officer then contacted the station which dispatched a detective. The detective was also granted access to the bedroom without any further consent. Upon defendant's arrival, the officer escorted him to his bedroom where the detective was waiting. The marijuana and related items were plainly visible in the bedroom.

The defendant testified that the officers asked him if he knew the "implications" of the items discovered, and thereafter a detective read defendant his *Miranda* rights without placing him under arrest or restraining him. The detective then asked the defendant for permission to conduct a search, and defendant signed a consent to search on a form provided by the officers.

The defendant testified that he consented to the search because the police had already found all of the contraband and because it would have been futile to refuse. After receiving defendant's consent, the detective conducted a further search of the bedroom, discovered nothing further, seized the marijuana and related items, and arrested defendant.

The trial court denied defendant's motion to suppress concluding that the warrantless entry into defendant's residence and the subsequent search and seizure were constitutionally valid because: (1) the babysitter and her mother had the authority to consent to the officer's initial entry into defendant's residence; (2) once the officer was inside, he had probable cause to believe a crime had been committed based on information revealed by

the babysitter and could then conduct a "protective sweep" of the residence to secure it; and (3) the police did not seize the contraband until defendant voluntarily consented to the search.

■ In reviewing a trial court's grant or denial of a motion to suppress, we defer to the trial court's findings of historical fact. However, if the trial court's ultimate conclusion of constitutional law is unsupported by evidentiary findings, or if the trial court applies an erroneous legal standard, the error is subject to correction by the reviewing court. *People v. Weston,* 869 P.2d 1293 (Colo.1994). Here, in our view, the trial court's ultimate conclusions of constitutional law are not supported by the record.

## I.

■ The initial inquiry here is whether the babysitter had authority to consent to a search of the bedroom of the defendant's residence. We conclude the babysitter did not have such authority.

The babysitter had been hired by defendant's wife, was hired only on an occasional basis, and had been hired on only four or five previous occasions. The record is silent as to any specific authority given, or limitations placed upon, the babysitter by either the defendant or his wife. It is also silent as to any representations made to the officer or the detective by the babysitter as to her authority.

A valid consent for a search "may be obtained either from the individual whose property is searched, or from a third party who possesses common authority over the property." *People v. Hopkins,* 870 P.2d 478, 480 (Colo.1994).

The "common authority" test was first articulated in *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974) (fn. 7), in which the court stated:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court expanded the "common authority" inquiry to include those instances in which a police officer reasonably believes, under an objective test, that a third party had the authority to consent to a search. The Colorado Supreme Court adopted the "apparent authority" test in *People v. McKinstrey,* 852 P.2d 467 (Colo.1993), and has since applied it in *People v. Hopkins, supra,* and *People v. Breidenbach,* 875 P.2d 879 (Colo.1994).

■ Under the rationale of *Rodriguez,* "police officers ... should make reasonable inquiries when they find themselves in ambiguous circumstances regarding the authority of the third party to consent to the search." *People v. McKinstrey, supra,* at 473. The prosecution bears the burden of proving that a third party had common authority over the premises to be searched. *People v. McKinstrey, supra.* The prosecution may do so by proving that the party consenting to the search had either "actual" or "apparent" authority over the premises to be searched. *See generally People v. Hopkins, supra.*

Whether a babysitter may consent to a search of his or her employer's residence has not previously been addressed by Colorado appellate courts. Courts in other jurisdictions have not uniformly resolved that issue. *See United States v. Dearing,* 9 F.3d 1428 (9th Cir.1993); *People v. Keith M.,* 255 Ill. App.3d 1071, 192 Ill.Dec. 825, 625 N.E.2d 980 (1993); *Cook v. State,* 531 So.2d 1369 (Fla. Dist.Ct.App.1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1542, 103 L.Ed.2d 846 (1989).

In our view the determinative factor is whether there is evidence indicating that the defendant delegated authority over the premises (or certain portions of the premises) to the babysitter or, alternatively, wheth-

er there is evidence indicating that the searching officer had a reasonable belief that the babysitter had such authority. *See United States v. Dearing, supra* (officer's belief that live-in caretaker and occasional housekeeper had control over defendant's bedroom unreasonable; consent invalid); *People v. Keith M., supra* (officer's belief that nonresident housekeeper had access to defendant's bedroom unreasonable; consent invalid); *Cook v. State, supra* (babysitter given full authority over residence in defendant's absence; consent valid).

Here, the trial court determined that the babysitter and her mother had the authority, or apparent authority, initially to admit the officer into defendant's residence. Indeed, the defendant concedes that the officer's initial entry into the home was lawful because at the time the babysitter's mother opened the door, the officer believed, or could reasonably have believed, that she was the occupant of the residence. *See People v. McKinstrey, supra; see also People v. Breidenbach, supra.*

The initial entry into the residence does not, however, complete the analysis. The trial court made no determination as to whether the babysitter or her mother had the authority, or apparent authority, to consent to a search of defendant's bedroom or the remainder of the residence.

The prosecution presented no evidence to support a determination that either the defendant or his wife had delegated any authority to the babysitter with respect to the residence beyond that necessary to care for the children. There is no evidence the defendant, or for that matter his wife, knew the babysitter's mother. There is no evidence supporting a determination that the officer reasonably believed the babysitter or her mother had the authority to consent to a search of defendant's bedroom. *See People v. McKinstrey, supra.* Neither the babysitter nor her mother testified at the hearing.

The officer testified that he believed the babysitter had authority over the *common areas* of the house and that he was unaware of any facts indicating the babysitter had the authority to enter defendant's bedroom. Thus, the officers could not reasonably be-

lieve the babysitter had authority to consent to a search of defendant's bedroom. *See United States v. Dearing, supra.*

Since the record does not support a determination that the babysitter or her mother had either actual or apparent authority to consent to a search of defendant's bedroom, the search cannot be validated based on the consent of a third party.

## II.

■ The next issue is whether the officer could, under the circumstances, search the residence without a warrant or consent. The trial court found no exigent circumstances to justify a warrantless search. It, nevertheless, held that the search was valid on the basis that the officer had probable cause to believe a crime had been committed by virtue of the statements of the babysitter and mother and that, hence, he could then search the residence to "secure" it. Even though the police here may have had probable cause to believe a crime had been committed, we conclude that, in the absence of exigent circumstances, their warrantless entry into defendant's bedroom was constitutionally impermissible. *See People v. Taube,* 864 P.2d 123 (Colo.1993).

Raising the issue for the first time on appeal, the People contend that we should find exigent circumstances here that would justify the warrantless search of the defendant's bedroom. We decline to do so. The trial court's finding of no exigent circumstances is supported by the testimony of the officer and detective that they did not consider the individuals at the residence to be a threat and that the situation was not one in which the officers were in danger or in which unknown individuals were throughout the premises. *See People v. Santisteven,* 693 P.2d 1008 (Colo.App.1984).

■ The trial court characterized the officers' search of defendant's bedroom as a "protective sweep" of the premises, implying that circumstances not rising to exigent circumstances justified the officers' actions. We conclude that such finding is not sustainable here.

The United States Supreme Court has held that a "protective sweep" of a private residence may be allowed when the searching officer has a reasonable belief that the area to be swept harbors an individual posing a danger to those on the arrest scene. *See Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Here, however, there is nothing in the record which supports a determination that the searching officers were in danger or that a protective sweep was warranted.

In addition, the officer's actions here were inconsistent with the notion of a "protective sweep." The officer took the babysitter with him on his initial entry into the bedroom which is inconsistent with any conclusion that the officer felt threatened or endangered. There is no evidence that any other part of the residence was searched or "secured" by either the officer or the detective at any time. Thus, the trial court's determination on this issue is not supported by the record.

## III.

Next, the trial court determined that defendant's consent to search was voluntarily and freely given, thereby eliminating the need for a search warrant. Again, we conclude the trial court's holding lacks evidentiary support.

Initially, we note that, if the officers' search was illegal, defendant's voluntary consent is constitutionally invalid under the derivative evidence doctrine. *See People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980); *People v. Donald,* 637 P.2d 392 (Colo.1981). However, defendant did not make this specific argument to the trial court and did not raise it on appeal; thus, we do not rely on that principle here. *See People v. Lesney,* 855 P.2d 1364 (Colo.1993). Instead, we address defendant's contention that his consent was involuntary.

For a consent to be constitutionally valid, "it must be found to have been given freely and voluntarily in light of the totality of circumstances." *People v. Cleburn,* 782 P.2d 784, 787 (Colo.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). Voluntary consent cannot be the result of duress, coercion, or any other form of undue influence exercised upon the defendant, and the prosecution has the burden of showing by clear and convincing evidence that the consent was voluntary. *People v. Cleburn, supra.*

Here, the evidence was uncovered in an illegal search, and the defendant was confronted with the incriminating evidence when the police had firm control over his home and family. Under such circumstances, the consent was, as a matter of law, involuntary. *See* 3 W. LaFave, *Search & Seizure* § 8.2(d) at 194 (2d ed. 1987); J. Hall, *Search & Seizure* § 8:29 (2d ed. 1991).

The judgment of conviction is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

PLANK and HUME, JJ., concur.