**The STATE of Ohio,**

v.

**BOYD.**

Hamilton County Municipal Court.

No. 97 CRB 18027.

Decided Jan. 7, 1998.

*Thomas A. Rolfes,* Assistant City Prosecutor, for the state of Ohio.

*Kevin Spiering,* for defendant.

---

ELIZABETH MATTINGLY, Judge.

Defendant Charla Boyd is charged with permitting drug abuse in violation of Cincinnati Municipal Code 911.5(A).

This matter came on for hearing on defendant's motion to suppress evidence allegedly gained as the result of an illegal search and seizure in violation of the Fourth Amendment to the Constitution. The parties have stipulated that there was no warrant. Thus, the state of Ohio has the burden of proving by a preponderance of the evidence that its search herein was constitutional. The

defendant asserts that the search in question does not meet constitutional requirements for the reason that consent was obtained from a person with no authority to give consent, that the consent given was involuntary, and that statements made by defendant, who knew the results of the illegal search, were involuntary and "fruit of the poisonous tree," and should be suppressed as a result.

The facts adduced at hearing are that on May 16, 1997, Officer Michael Brown had an apartment located at 3409 Woodlawn Avenue in the city of Cincinnati under surveillance for suspected drug sales. Officer Brown was dressed in jeans, a tee shirt, and sneakers.

He saw an individual named Chris Hisle enter the apartment with a bag that Officer Brown suspected contained illegal drugs. At this point, the testimony of the witnesses diverge. Officer Brown testified that he then followed Hisle to the door of the apartment and knocked on the door, announcing that he was a police officer. At this point, Hisle slammed the door. Officer Brown then knocked again on the door.

Ayanna Burstion, an adult female, answered the door. Officer Brown did not initially know who she was. He established that she was the baby-sitter on the premises watching the two preschool children of the person known by Officer Brown to be the lessee of the premises, defendant Charla Boyd. Officer Brown had seen Burstion admit two teenagers into the apartment in question earlier on May 16, 1997. Boyd was not in the apartment at the time of the events in issue here.[1]

Officer Brown then talked with Burstion, who knew he was a police officer, asking Burstion where the young man who had slammed the door in his face had gone.[2] The baby-sitter indicated that he was in the back of the apartment. Officer Brown asked Burstion whether he could go into the back, and she agreed that he could. She then walked to the side (back) door of the apartment to let in a uniformed officer. This action is alluded to on the audiotape in evidence herein in which Officer Brown stated at 2:28 p.m., "Got someone opening back door for that uniform."

Officer Brown proceeded to the bathroom, where he found Hisle attempting to flush drugs down the toilet and dispose of the weapon he possessed. Hisle was later charged with felony possession of marijuana and weapons charges.

---

1. The record does not indicate where defendant Boyd was at the time the search of the premises occurred.

2. There is no suggestion in the record that anyone other than Chris Hisle was the focus of Officer Brown's request to search.

Later, Burstion signed a form putting in writing her previously given oral consent to search the premises. Officer Brown explained the consent form to Burstion, and she seemed to understand it. Officer Brown did not have written consent forms on his person at the time he first came to the front door of the premises, since he was working in an undercover status. Throughout Officer Brown's contact with Burstion, she seemed calm and was not crying or upset. He did not threaten her to obtain either the oral or written consent to search the apartment.

Burstion's account of the events of May 16, 1997 differs significantly from Officer Brown's testimony. She testified that Chris Hisle, a friend of Charla Boyd's, entered the apartment by letting himself in the front door. He was carrying a bag. Burstion and Hisle were sitting at the kitchen table preparing to smoke a joint, when Officer Brown initially knocked on the door. Hisle went to answer the door, since Burstion was on the telephone. Burstion heard someone at the door ask whether Charla Boyd was home, but Hisle never opened the front door. He took the bag to the back of the house.

What Burstion observed concerning Officer Brown at this point is unclear. At one point in her testimony, she asserted that she could see "a little bit out the door and noted a walkie-talkie with the top of the antenna sticking out the door." As a result of this observation, she walked back to Charla Boyd's bedroom to check on her nine-month-old daughter, who was sleeping on the bed, because she figured "something was not right." Burstion denies that she went to the rear of the apartment to open the rear door for a uniformed officer. At another point in her testimony, however, Burstion asserts that she first saw Officer Brown when he entered the apartment. As she puts it, "No, I didn't see him. The door was shut. How could I see if the door was shut?"

According to Burstion, Officer Brown continued to knock on the front door and window, repeatedly shouting "Cincinnati Police. Open the fucking door." She finally opened the door only for fear of injury to the children who were in the living room. The baby-sitter asserts that Officer Brown never asked her whether he could come in, that he entered the premises with his weapon drawn, that whatever consent she gave to search the premises was not voluntary, and that she signed the consent-to-search form after the fact because the officer told her she must sign the form to allow him to take Hisle's gun out of the apartment. She perceived that the gun was dangerous to the children, so she signed the form. Further, Burstion signed the written consent form because she did not know whether she had any option not to sign the form.

Burstion's status in the apartment is important to consideration of the consent issue. It is not disputed that Ayanna Burstion was in the defendant's apartment baby-sitting defendant Boyd's minor children. On the date in question, she had

admitted two teenagers into the apartment in the absence of the lessee. She was a long-time friend of defendant Boyd and had watched her children weekly for a considerable period. Moreover, Burstion had use of the apartment to the extent of using the telephone and having her own child sleep in Boyd's bedroom.

The first issue presented here is whether Ayanna Burstion, a baby-sitter who has no legal interest in the premises, can consent to a search of the common areas of the apartment in the absence of the defendant lessee.[3] Initially, the decision of the United States Supreme Court in *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, held that third-party consent is valid against the absent, nonconsenting party when the party giving consent has "common authority" over the property. In footnote 7, the court defined such common authority as follows:

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 250.

When the facts do not support a finding of actual authority, a search is reasonable within the meaning of the Fourth Amendment if the consent giver apparently has actual authority. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161.

In the few cases nationally that have considered the issue of whether a baby-sitter can properly consent to a search of the premises, most courts have held that an adult baby-sitter does have an ability to voluntarily consent to a search of the common areas of the premises. *Butler v. Commonwealth of Kentucky* (1976), 536 S.W.2d 139; *People v. Misquez* (1957), 152 Cal.App.2d 471, 313 P.2d 206; *United States v. Thomas* (C.A.5, 1997), 120 F.3d 564; *Cook v. Florida* (Fla.App. 1988), 531 So.2d 1369; *United States v. Dearing* (C.A.9, 1993), 9 F.3d 1428 (consent to search bedroom invalid although belief of officer that consent giver had authority over the common areas of the house was clearly reasonable). Contrary results have been reached in cases involving minor baby-sitters consenting to the search of the private areas of the residence, such as *People v. Walter* (Colo.App.1994), 890 P.2d 240, in which the consent of a fifteen-year-old occasional baby-sitter to search of a bedroom was found constitutionally invalid based on

---

3. The United States Supreme Court has not yet directly addressed this issue.

officer's testimony that he was unaware of any facts indicating that the baby-sitter had authority to enter defendant's bedroom where the contraband was found. *Id.* at 243. A finding of no authority of the consent-giver to consent was also made in *People v. Keith* (1993), 255 Ill.App.3d 1071, 192 Ill.Dec. 825, 625 N.E.2d 980, based on the specific finding of the trial court that the baby-sitter/housekeeper in question was specifically instructed by the homeowner not to explore or disturb certain drawers in which the contraband was found and the consent-giver was never authorized to have visitors in the house. See, specifically, *id.* at 1081, 192 Ill.Dec. at 831–832, 625 N.E.2d at 986–987, Finally, the court in the curious case of *People v. Litwin* (1974), 44 A.D.2d 492, 355 N.Y.S.2d 646, ruled that the alleged consent of the twenty-year-old baby-sitter to the search defendant's den was invalid. The facts in *Litwin* are somewhat unusual in that the court found that the police in fact asked the baby-sitter's boyfriend whether he would mind if the police officer looked at the contraband, and the boyfriend said no. The baby-sitter simply made no objection, and contraband was discovered in the defendant's den. *Id.* at 493–494, 355 N.Y.S.2d at 648. As the court specifically noted:

"There is nothing in the record to indicate that the troopers had any basis to rely on permission of the baby-sitter or her companion." *Id.* at 494, 355 N.Y.S.2d at 649.

Applying these cases to the facts at issue here, the court specifically finds that Ayanna Burstion was an adult baby-sitter with children of her own at the time of the search at issue. She regularly baby-sat defendant's children over a period of years. Also, it is beyond dispute that the search here was aimed at locating Chris Hisle, not defendant Boyd. Chris Hisle was on defendant's premises with the acquiescence of Boyd's baby-sitter. Hisle was merely a casual visitor at the time the issue of consent to search arose. As the Supreme Court of Kentucky has noted in *Butler, supra,* it is reasonable to assess the consent to search not only in terms of the status of the party who gave it, but also the status of the party whose rights are affected by it.

The court further finds that defendant's baby-sitter had authority to determine whom to admit to the residence, a factor which is often considered in cases of alleged third-party consent to search. See discussion in 1 Ringel, Searches & Seizures, Arrests and Confessions (2 Ed.1979), Section 9.5(c)(1). The court also finds that Burstion had authority over the common areas of the residence in question in the absence of the lessee of the premises who employed her. Such common areas include the bathroom where the contraband was found.[4]

---

4. There is scant description in the testimony herein as to the scope of the search undertaken at Boyd's residence. However, all the testimony presented was in agreement that the drugs and weapon seized during the search were found in the bathroom of the apartment.

The court finds that Burstion did have the authority to consent to the search here in view of her adult status, her personal use of the premises for herself and her child, particularly since the search here was aimed at Hisle, who is merely a friend of defendant Boyd, who had entered the premises by himself. Further, there was no evidence that Hisle lived at the apartment at any time or had any recognizable interest in the premises. Burstion had access to the common areas of the apartment, including the bathroom where the drugs and weapon were found. Given these facts, the court finds that Burstion did have sufficient use, access, and relationship to the premises to be able to consent to a search of the common areas. In the alternative, the court finds that Burstion had such apparent authority over the premises that it was reasonable for Officer Brown to believe that she could properly consent to the search at issue here.

■ The second question posed by the motion to suppress is whether, even though Burstion had the ability to consent, she freely and voluntarily consented to the search as required by the Fourth Amendment. In this respect, the court specifically credits the testimony of the officer. Burstion is admittedly a long-time friend and employee of defendant who may well have had no thought when she allowed Officer Brown to look for Hisle in Boyd's apartment that charges would ultimately be brought against her lifetime friend. She contradicted herself during sworn testimony before the court, and is not herself at risk for any criminal prosecution here. Further, the court finds that several aspects of Burstion's testimony are not worthy of belief and declines to credit them.

Accepting Officer Brown's testimony as credible, the court finds that Burstion voluntarily consented to the search of Boyd's apartment.

■ The third matter sought to be suppressed herein is certain admissions allegedly made by defendant Boyd shortly after she arrived at her apartment, just as Officer Brown had completed his search and was about to leave the apartment. Boyd was a bit upset to see a police car outside her building. Officer Brown read Boyd her *Miranda* rights from a card he kept in his pocket and then informed her that he was conducting an investigation and that he had found drugs and a weapon in her apartment. Boyd then stated that Hisle was a close friend who had paid her for use of her apartment to facilitate drug deals for the past two months. After this brief conversation, Officer Brown left the premises and arrested Boyd four days later on the pending charge.

The only other witness to the conversation between defendant and Officer Brown was Burstion, who disputes the officer's account. Boyd did not testify concerning this matter.

In view of the court's determination that the search in question was constitutionally valid, any admission made by Boyd after the search is not "fruit of the

poisonous tree." Also, for the reasons stated previously herein, the court does not credit Burstion's testimony and finds that Officer Brown did gave *Miranda* warnings to Boyd prior to her incriminating statements being made and that such statements were made freely and voluntarily.

The court notes parenthetically that because the conversation here occurred at defendant's residence and she was not under arrest, the requirements of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, do not apply.

For the above stated reasons, the court hereby denies defendant's motion to suppress.

*Motion denied.*